## ELIJAH RUMRILL *against* HEZEKIAH HUNTINGTON.

**CASE** stated.

This was a writ of error, brought in the Superior Court, by *Rumrill* against *Huntington*, to reverse a decree of the County Court. The question reserved for the opinion of this Court, arose upon the following case.

In *February*, 1810, *Huntington* instituted a suit in chancery against *Rumrill*, before the County Court, at the term in *March* following. The material facts alleged in the petition, were as follows, viz., that on the 15th day of *September*, 1809, *Rumrill*, before the Superior Court, recovered a judgment in his favour against the petitioner, for the sum of 90 dollars damages, and for the sum of 51 dollars, 94 cents, costs ; that at the same time, *Rumrill* was indebted to the petitioner in a much larger sum, on account of three judgments in favour of the petitioner, and against him; that, at this time, *Rumrill* was insolvent, and without any visible property whatever ; that on the 16th day of *September*, 1809, the petitioner gave notice to *William Bradley* of the facts above stated, and also, that he intended to prefer his petition in chancery against *Rumrill*, to procure a set-off of their respective claims.

*Rumrill*, in his answer to this petition, stated, that on the 15th day of *September*, 1809, and previous to that time, he was indebted to *William Bradley* in the sum of 172 dollars, 18 cents, for his fees, and for monies by him advanced for conducting and managing the cause, in which *Rumrill* recovered the judgment against the petitioner, as mentioned above ; and for managing and conducting other causes between the same parties, connected with the first mentioned cause ; that *Bradley* had no security for his debt, except the personal

*A.* being insolvent, recovered a judgment in his own name, in a suit against *B.* ; at the same time, *A.* was indebted to *B.* in a larger sum, on account of sundry judgments in his favour against *A.* ; *A.* was also indebted to *C.* for services rendered, and money paid out, as the attorney of *A.*, in managing the suit in favour of *A.* against *B.* ; *B.* gave notice to *C.* of the mutual claims subsisting between him and *A.*, and of his intention to prefer a petition against *A.*, for a set-off ; *B.* brought his petition accordingly ; but before the bringing of such petition, and after notice of the existence of such mutual claims, &c., *C.* procured an assignment of the judgment in favour of *A.* against *B.*, in payment of his debt : Held, that such assignment was valid, and that the set-off, as prayed for, could not be made.

Held, also, that *C.*, the attorney, had no lien upon the judgment, which could vary or affect the right of third persons.

*Qu.* Whether *C.* ought not to have been made a party to the petition for a set-off ?

security of *Rumrill*, and his lien on his papers, and on the judgment in his favour against *Huntington*; and that on the 23d day of *October*, 1809, *Rumrill*, in payment of the debt due to *Bradley*, assigned to him the judgment against *Huntington*. The County Court found the facts stated in the petition and answer, to be true ; but adjudged the answer to be insufficient ; and decreed a set-off according to the prayer of the petitioner.

*Bradley*, for the plaintiff.

The decree of the County Court, is erroneous, on two grounds.

1. An attorney has a lien upon the papers and securities of his client, for his services and disbursements ; and therefore, no set-off of the debt and costs recovered in the action, can be made, which shall impair this right.    *Mitchell* v. *Oldfield*, 4 *Term Rep.* 123.    *Read* v. *Dupper*,   6 *Term Rep.* 361. *Randle* v. *Fuller*, 6 *Term Rep.* 456.    *Glaister* v. *Hewer*, 8 *Term Rep.* 69. *Turwin* v. *Gibson*, 3 *Atk.* 720.

2. By the assignment of a judgment, in payment of a *bona fide* debt, the assignee acquires a strict legal right to the property, and is entitled to receive the money.    *Grant et al.* v. *Holkins et al.* 2 *Root*, 469. *Swift's Ev.* 350. 2 *Fonbl. Eq.* 304 to 307.

*T. S. Williams*, for the defendent, contended, in the first place, that *Bradley* could have no lien upon the judgment in favour of *Rumrill*, which would impair the right of *Huntington* to a set-off of their mutual demands.    *Schoole* v. *Noble & al.* 1 *H. Black. Rep.* 23.    *Dennie* v. *Elliott & al.* 2 *H. Black. Rep.* 587.    *Thrustout* v. *Crafter*, 2 *Wm. Black. Rep.* 826. *Hall* v. *Ody*, 2 *Bos. & Pul.* 28. *Anon. Moseley's Rep.* 68.

2. *Bradley*, as assignee of the judgment, must take it subject to all its equity.    *Turton* v. *Benson*, 1 *P. Wms.* 496, 498. S. C. 2 *Vern.* 765. *Boles* v. *Jones*, 2 *Vern.* 692. *Peacock* v. *Rhodes & al. Doug.* 636. *Hill* v. *Caillovel*, 1 *Ves.* 123. *Bacon* v. *Warner*, 1 *Root's Rep.* 349. *Williams* v. *Smith*, 2 *Root's Rep.* 464. 1 *Bac. Abr.* 249. *Guill.* edit. 2 *Swift's Syst.* 466,

TRUMBULL, J.   It is a general principle, that an attorney has a lien for his services and expenses, on the papers and securities of the client, in his hands, of which he may avail himself in an action of *trover* ; and that he is answerable to him in *account*, only for the balance of the avails, when collected.

But an attorney has no lien upon a judgment obtained in favour of his client, which can vary or affect the rights of a stranger.   No such lien is created, either at common law, or by the principles of chancery.

In the present case, *Bradley* had no lien, which could avail him.   As a *bona fide* creditor, he was in equal equity with *Huntington.*   Nor had he, as yet, any legal interest in the judgment and execution.   *Huntington* was accountable to *Rumrill* only.   In a suit in chancery between them, equity would, in that stage, have decreed a set-off of their mutual claims.  But before any suit was brought, *Rumrill* assigned the judgment and execution, in discharge of his debt to *Bradley.* This assignment transferred to *Bradley* the legal right to the avails of the execution, and must be conclusive against the claims of any other creditor, unless it was obtained by fraud and collusion.   *Rumrill* had a right, by law, to assign the execution, in satisfaction of a just debt, to any of his creditors.

But it is claimed, that *Bradley*, in taking this assignment, was guilty of a fraud against *Huntington.*   *Huntington*, after the judgment was obtained against him, gave notice to *Bradley*, that he should bring his petition in chancery for a set-off; and cautioned him not to take an assignment of the execution.   But this notice could have no effect, as neither of them had any legal rights at the time.   *Bradley* might, with equal propriety, have cautioned *Huntington* not to bring a petition, or take a discharge, because he intended to procure an assignment.   If this notice could have been of any avail, at the time, it ought to have been carried into immediate effect; yet it appears, that *Huntington* neglected to bring any petition until more than five months had elapsed; during which time, he suffered one court to pass over, to which he ought

to have preferred it, if he designed that *Bradley* should be bound by the notice.

But on another ground, the judgment of the County Court, is clearly erroneous. The petition is brought against *Rumrill* only. *Bradley*, by this assignment, claims the property of the execution. *Rumrill* avers in his answer, that he has thus assigned and transferred it, and has no claim to the avails. The County Court have decreed a set-off of this debt against the demands of *Huntington*, which amounts to a legal discharge of the execution. *Bradley*, the only person in interest, is not made a party, nor had any day in court to defend against the petition. His rights are destroyed without a hearing.

All the other judges concurred in this opinion.

Judgment reversed.