## Marsh, Day & Calhoun *v.* Elisabeth Solomon
### (13083)

Peters, C. J., Healey, Shea, Callahan and Lavery, Js.

Argued May 13—decision released August 4, 1987

*John Lino Ponzini* for the appellant-appellee (defendant).

*Abraham I. Gordon,* with whom, on the brief, were *Richard S. Scalo* and *Ronald D. Japha,* for the appellee-appellant (plaintiff).

ARTHUR H. HEALEY, J. The plaintiff, Marsh, Day & Calhoun, brought this action against the defendant, Elisabeth Solomon, to recover legal fees for services rendered to her. The defendant filed a counterclaim alleging that, upon the termination of their attorney-client relationship, the plaintiff had wrongfully refused, despite demand, to return her files. In her counterclaim, the defendant sought damages and an order directing the plaintiff to return the files. During the trial to the jury, the trial court ruled that it would itself decide that part of the counterclaim which sought an order directing the plaintiff to turn over to the defendant the files it had retained. The trial court then ordered the defendant to file an amended counterclaim reflecting its ruling.[1] On January 23, 1986, the jury returned a verdict

---

[1] The defendant's original counterclaim was the following: "1. On or about October, 1983, Defendant retained Plaintiff to represent her in several legal matters and Plaintiff undertook to do so.

"2. On or about August, 1984, Defendant and Plaintiff terminated their attorney-client relationship on one such matter with a balance outstanding and an agreement relative to the conditions of paying such balance due.

"3. On or about October, 1984, the parties terminated their attorney-client relationship on other legal matters.

"4. Since those times Defendant has retained new counsel to proceed with these matters and Plaintiff has, despite demand, refused to turn over to Defendant or her attorneys her files in violation of the Code of Professional Responsibility, DR 9-102 (B) (4).

"5. Defendant has paid her account on several of these files but despite

for the plaintiff on the complaint in the amount of $60,047.42, plus interest, and also a verdict for the plaintiff on the amended counterclaim. On the same day, the trial court filed its memorandum of decision on the matter it had heard as a court. In that memorandum, the trial court denied the defendant's request for an order directing the plaintiff to return the files. After the trial court denied the defendant's motions to set aside the verdict and for judgment notwithstanding the verdict, the defendant filed an appeal and the plaintiff filed a cross appeal in the Appellate Court. Pursuant to Practice Book § 4023, this court transferred the appeal and the cross appeal to itself.

this Plaintiff refuses to give Defendant her files.

"6. In all cases, Plaintiff's actions constitute a breach of the express or implied agreement between the parties.

"7. Further, Plaintiff's actions are an abridgement of Defendant's rights as a matter of law.

"8. Further, in many of these matters, Plaintiff failed to obtain the Defendant's informed consent on the course of Plaintiff's actions on her behalf and otherwise at times acted contrary to the Defendant's lawful instructions and wishes.

"9. As a result, the services of the Plaintiff were not reasonably worth what Plaintiff alleges and Plaintiff's actions have damaged Defendant in proceeding with the cases which are the subject matter of this action."

The defendant's amended counterclaim was the following: "1. On or about October, 1983, Defendant retained Plaintiff to represent her in several legal matters and Plaintiff undertook to do so.

"2. On or about August, 1984, Defendant and Plaintiff terminated their attorney-client relationship on one such matter with a balance outstanding and an agreement relative to the conditions of paying such balance due.

"3. On or about October, 1984, the parties terminated their attorney-client relationship on other matters.

"4. Since those times, Defendant has retained new counsel to proceed with these matters.

"5. In many of these matters, Plaintiff failed to obtain the Defendant's informed consent on the course of Plaintiff's actions on her behalf and otherwise at times acted contrary to the Defendant's lawful instructions and wishes.

"6. As a result, the services of the Plaintiff were not reasonably worth what Plaintiff alleges and Plaintiff's actions have damaged Defendant in proceeding with the cases which are the subject matter of this action."

The following background facts are undisputed. The plaintiff rendered legal services as attorneys at law to the defendant between October 3, 1983, and October 10, 1984. A dispute arose between the parties and the relationship ended on October 10, 1984. Despite demand by the plaintiff, the defendant failed to pay the claimed balance of $60,047.42, plus interest. On November 15, 1984, the plaintiff brought this action and obtained a prejudgment remedy of attachment on property owned by the defendant in Westport. Throughout the trial and appeal, the plaintiff has retained possession of the defendant's files under a claim of an attorney's lien.

On appeal, the defendant asks that the files in the plaintiff's possession be turned over to her and seeks a new trial on the issue of the damages resulting from the allegedly wrongful retention of her files.[2] On the cross appeal, the plaintiff alleges error in the exclusion of evidence concerning the litigation costs which it incurred in the trial below and in the trial court's failure to charge the jury as to those costs. We find no error on the appeal or the cross appeal.

I

In her appeal, the defendant contends that: (1) Connecticut does not recognize a self-executing attorney's retaining lien; (2) even if an attorney's retaining lien has been recognized in the past, it should be void for public policy reasons; and (3) by securing an attachment of the defendant's property, the plaintiff waived any right to a retaining lien.

A

The main issue on this appeal is whether Connecticut recognizes a common law, self-executing attorney's

---

[2] The defendant has not challenged the jury's verdict that awarded damages to the plaintiff for breach of their contract for legal services.

retaining lien. An attorney's retaining lien is a possessory lien on a client's papers and files that the attorney holds until his fee has been paid. 7 Am. Jur. 2d, Attorneys at Law § 315; 7A C.J.S., Attorney and Client §§ 357, 358; comment, "Attorney's Liens: A Practical Overview," 6 U. Brpt. L. Rev. 77, 80 (1985). A retaining lien differs from a charging lien, which is a lien placed upon any money recovery or fund due the client at the conclusion of suit. 7 Am. Jur. 2d, supra, § 324. A retaining lien is a passive lien and the attorney is unable to enforce it at law or in equity. *Hagearty* v. *Burns,* 4 Conn. Sup. 505, aff'd sub nom. *Hagearty* v. *Ryan,* 123 Conn. 372, 195 A. 730 (1937); *Midvale Motors, Inc.* v. *Saunders,* 21 Utah 2d 181, 184, 442 P.2d 938 (1968); *Mahomet* v. *Hartford Ins. Co.,* 3 Wash. App. 560, 567, 477 P.2d 191 (1970). A retaining lien affords only the right to retain possession until all proper charges are paid. There is no right of sale and the retaining lien's principal value is the leverage that the lien gives to the attorney over a client who refuses to pay for services rendered. *Brauer* v. *Hotel Associates, Inc.,* 40 N.J. 415, 422, 192 A.2d 831 (1963).

At common law, the existence of a retaining lien is unquestioned in both English and American courts. *Pomerantz* v. *Schandler,* 704 F.2d 681 (2d Cir. 1983); *The Flush,* 277 F. 25, 29 (2d Cir. 1921), cert. denied sub nom. *Bulk Oil Transports* v. *Thompson,* 257 U.S. 657, 42 S. Ct. 184, 66 L. Ed. 421 (1922). It was recognized in England as early as 1734. *Ex parte Bush,* 7 Viner's Abr. 74, 22 Eng. Rep. 93 (Ch. 1734); see *In re Morris,* 1 K.B. 473 (1907). In *McPherson* v. *Cox,* 96 U.S. 404, 417, 24 L. Ed. 746 (1877), the United States Supreme Court pointed out that an attorney has a lien by law, apart from any express agreement, on the retained papers of his or her clients for all unpaid attorney's fees. Federal courts of appeal have recognized the attorney's retaining lien; *Pomerantz* v. *Schandler,*

supra; *The Flush,* supra; *Everett, Clarke & Benedict* v. *Alpha Portland Cement Co.,* 225 F. 931, 935–37 (2d Cir. 1915); as have most state courts. Annot., 3 A.L.R.2d 148, 150 (1949); see, e.g., *Attorney Grievance Commmission of Maryland* v. *McIntire,* 286 Md. 87, 96, 405 A.2d 273 (1979); *Levitas* v. *Levitas,* 96 Misc. 2d 929, 931, 410 N.Y.S.2d 41 (1978); *Silverstein* v. *Hornick,* 376 Pa. 536, 541, 103 A.2d 734 (1954); but see *Academy of California Optometrists, Inc.* v. *Superior Court,* 51 Cal. App. 3d 999, 1004, 124 Cal. Rptr. 668 (1975).

Connecticut has also recognized the validity of the attorney's retaining lien. In *Gager* v. *Watson,* 11 Conn. 168, 173 (1836), we stated: "An attorney, as against his client, has a lien upon all papers in his possession, for his fees and services performed in his professional capacity, as well as upon judgments received by him." This quoted passage obviously refers to both retaining liens on papers and charging liens on judgments. See also *Hagearty* v. *Burns,* supra, 506. The most recent Connecticut Supreme Court case to discuss the subject of retaining liens, *Andrews* v. *Morse,* 12 Conn. 444, 446 (1838), approved of the *Gager* holding and stated: "We only say, that [attorneys] have, in certain cases, of which this is one, such a claim upon [judgments and papers] as courts of law and equity will protect and enforce, until their lawful fees and disbursements are paid . . . ."

The defendant argues that "[f]rom the lack of Connecticut case law on retaining liens, it is clear that they have not been viewed by the Connecticut courts as being self-executing." Citing *Andrews* v. *Morse,* supra, the defendant asserts that Connecticut does not recognize self-executing retaining liens but only a "modified version." The defendant claims that although Connecticut recognizes a right to a retaining lien, the lien is not self-executing but must be established by a court. The defendant argues that the words in *Andrews,*

"courts of law and equity will protect and enforce," indicate that only a lien enforced by a court is recognized. We disagree. Although the court in *Andrews* dealt with a charging lien, there is nothing in that opinion to support the defendant's claim that only a retaining lien established by a court, as opposed to one that is self-executing, existed at common law.[3]

The *Andrews* opinion also refers to a court's protection of the attorney's lien. The fact that protection of the lien is available in a court of law or equity does not defeat the plaintiff's claim that the retaining lien is self-executing. An attorney's retaining lien need not be established by a court; *Hagearty* v. *Burns,* supra, 506; but it certainly can be protected by a court. The only express statement that the *Andrews* court made concerning a limit on an attorney's lien is that it was not a lien similar to those of manufacturers and others. *Andrews* v. *Morse,* supra. This clearly refers to the right of a manufacturer to sell goods in its possession, a remedy not available to an attorney who has possession of a client's papers. *The Flush,* supra, 30; *Eiduson Fuel & Hardware Co.* v. *Drew,* 59 App. Div. 2d 1025, 399 N.Y.S.2d 764 (1977); 7 Am. Jur. 2d, supra, § 323.

A self-executing attorney's retaining lien is not an absolute right but is merely a method for an attorney to protect his proper fee. There are a number of exceptions to the right to impose a retaining or possessory lien. See N. Thompson, "Attorneys' Fees and Liens," 85 Com. L.J. 136 (1980). It cannot be utilized, for exam-

---

[3] The defendant, at oral argument, referred to *Rumrill* v. *Huntington,* 5 Day 163, 165 (1811), which states that an attorney's lien on papers and securities of a client may be enforced in an action of trover. The defendant maintains that this demonstrates a need for independent action by the attorney to enforce any lien, thus proving that only a charging lien existed at common law. The later case of *Andrews* v. *Morse,* 12 Conn. 444, 447 (1838), however, declared that its opinion was consistent with *Rumrill.* We hold that the interpretation of the *Andrews* court, an opinion that recognizes a self-executing attorney's retaining lien, is controlling.

ple, if the attorney has withdrawn voluntarily or has been discharged for good cause, including negligence and other misconduct. *The Flush,* supra, 28; 7 Am. Jur. 2d, supra, § 321. When a client has shown a need for the files, courts have ordered release upon payment or furnishing of adequate security. See, e.g., *Eiduson Fuel & Hardware Co.* v. *Drew,* supra, 1025–26; annot., supra, 152. There are only rare circumstances when the files will be released without the furnishing of adequate security. *Pomerantz* v. *Schandler,* supra, 683; see, e.g., *Hauptmann* v. *Fawcett,* 243 App. Div. 613, 276 N.Y.S. 523 (papers were needed in defense of a capital murder charge), modified, 243 App. Div. 616, 277 N.Y.S. 631 (1933). Even in *Hauptmann,* the files were ordered returned to the attorney after their use. Therefore, barring unusual circumstances, such as prejudice to the rights of a client, an attorney is under no obligation to release the files of a client unless there has been payment, the furnishing of adequate security or, of course, a mutually acceptable arrangement between the parties. The defendant has not identified any circumstances that would require an exception to this general rule.[4]

---

[4] Since we have affirmed the validity of the self-executing attorney's retaining lien, the defendant's claim that the plaintiff violated the Code of Professional Responsibility DR 9-102 (B) (4) fails because it is only a violation if the attorney fails to deliver properties "which the client is entitled to receive." Because, under the circumstances of this case, the defendant is not "entitled" to the files, there is no violation of the Code of Professional Responsibility.

Code of Professional Responsibility DR 9-102 (B) (4) provides: "PRESERVING IDENTITY OF FUNDS AND PROPERTY OF A CLIENT . . . .

"(B) A lawyer shall . . .

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

The Code of Professional Responsibility has been superseded by the Rules of Professional Conduct, effective October 1, 1986.

In her reply brief, the defendant refers to Ethics Opinion 84-3 of the statewide grievance committee. 48 Conn. L.J. 13, p. 15B (1986). This recent

## B

The defendant also claims that the self-executing attorney's retaining lien deprived her of due process of law under both the federal and state constitutions. The defendant did not raise this issue in the trial court and thus it is presented for the first time on appeal. Only in the most exceptional circumstances will this court review a claim that was not raised in the trial court. Practice Book § 4185; *State* v. *Evans*, 165 Conn.

opinion, according to the defendant, mandates that certain documents be returned to the client even if the fee is unpaid. Although the grievance committee opinion is purely advisory and not binding, it should be noted that the mandatory return is called for only when "the failure to return the documents would jeopardize the client's claim." Id., p. 16B. The defendant in this case has made no specific showing that the withholding of her files jeopardized any of her pending claims.

The defendant also cites Formal Opinion No. 31, The Obligation to Turn over a Client's File and the Right to Protect an Earned Legal Fee (1978), of the Connecticut bar association, committee on professional ethics. That opinion sets out a different scenario than this case. That case involved a change of attorneys in a personal injury case where the initial attorney sought not only to protect his contingency fee but also the agreement he had made with physicians that their bills would be paid from the recovery. There, the Connecticut bar association recommended that the initial attorney relinquish the file either after an agreement with subsequent counsel is reached regarding payment or when a letter is sent from the subsequent lawyer stating he will withhold sufficient funds of the client until the initial lawyer's bill is resolved. Id. Although this opinion is purely advisory to both the trial court and this court, the trial court found that neither alternative had been pursued by the defendant.

The trial court's memorandum of decision indicates that David Maclay, a partner in the plaintiff law firm, was willing to cooperate with the defendant's subsequent attorney. The trial court's memorandum discloses: "The plaintiff's partner testified he would cooperate with any succeeding attorney, that he wanted some arrangement reached for eventual payment for the services, suggesting a real estate mortgage to defendant at one point, and that he would 'work something out' with successor counsel for specific documents as needed by such successor to evaluate defendant's claims." The trial court found that the plaintiff had been discharged without cause and that no amicable negotiations had taken place concerning this matter. It is apparent, however, that where it is demonstrated that retention of the file by the initial attorney injures the rights of the client, potentially serious ethical problems confront the initial attorney.

61, 69, 327 A.2d 576 (1973); see *Roche* v. *Fairfield,* 186 Conn. 490, 442 A.2d 911 (1982). The exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record adequately supports a claim that a litigant clearly has been deprived of a fundamental constitutional right and a fair trial. *Cahill* v. *Board of Education,* 187 Conn. 94, 100, 444 A.2d 907 (1982); *State* v. *Evans,* supra, 70. Because neither exceptional circumstance is applicable to the facts in this case, we do not reach the issue of whether the self-executing attorney's lien deprived the defendant of due process of law under the state or federal constitution. See *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 466, 378 A.2d 547 (1977) (refusing to hear procedural due process claim because the lower court had no opportunity to consider the claim). In reaching this conclusion, we note that only on very rare occasions has this court, in the context of a civil case, invoked *State* v. *Evans,* supra, in order to review a claim not raised in the trial court. See, e.g., *Page* v. *Welfare Commissioner,* 170 Conn. 258, 267, 365 A.2d 1118 (1976) (state equal rights amendment had been enacted between time of trial and appeal).

The defendant also argues that the self-executing attorney's lien is contrary to public policy because it frustrates the right of a client to change attorneys at any time and for any reason. In support of this claim, the defendant argues that "[i]f the client's right to change attorneys is absolute, it cannot be the case that the first attorney can defeat that right, in effect, by withholding the client's file unilaterally . . . ."

The right of unfettered discretion to change attorneys is recognized in Connecticut. *Cole* v. *Myers,* 128 Conn. 223, 229, 21 A.2d 396 (1941). It is also recognized by most other jurisdictions. Annot., supra, 151; 7 C.J.S., supra, § 109; see, e.g., *Levitas* v. *Levitas,*

supra. The attorney also has a right to be paid for services rendered. *Cole* v. *Myers,* supra, 230; annot., supra, 151. The attorney's lien is compatible with both rights. Although the client is free to change attorneys at any time, the client cannot compel the initial attorney to return the files unless that client first pays the balance owed, makes a mutually acceptable arrangement, or furnishes adequate security for the services rendered by the former attorney. This, of course, does not overlook the ethical obligation of the attorney not to exercise the lien to injure the rights of the client. Under current law, the tension between the client's unfettered right to change attorneys and the attorney's right to be compensated for legal services rendered is accommodated appropriately by the self-executing attorney's retaining lien. The defendant's public policy argument must therefore fail.[5]

## C

The final issue raised by the defendant is that the plaintiff waived its right to the attorney's lien because

[5] It has been said that a court has inherent power to enforce retaining liens and that such power arises out of its ability to control and protect its officers. *Upgrade Corporation* v. *Michigan Carton Co.,* 87 Ill. App. 3d 662, 410 N.E.2d 159 (1980); see *Leviten* v. *Sandbank,* 291 N.Y. 352, 52 N.E.2d 898 (1943); comment, "Attorney's Liens: A Practical Overview," 6 U. Brpt. L. Rev. 77, 89 (1985). Acknowledging this power, the Second Circuit Court of Appeals has held that "[t]he power which the courts have summarily to enforce the performance by the attorney of his duties toward his client enables the court to protect the rights of the attorney as against the client." *Everett, Clarke & Benedict* v. *Alpha Portland Cement Co.,* 225 F. 931, 935 (2d Cir. 1915). The power to enforce is not only inherent but also discretionary. See *In re Long,* 287 N.Y. 449, 40 N.E.2d 247 (1942). Courts have inherent power to order an attorney to release property in his possession in the interest of fairness and equity. See *Upgrade Corporation* v. *Michigan Carton Co.,* supra; *Steiner* v. *Stein,* 141 N.J. Eq. 478, 58 A.2d 102 (1948); *Leviten* v. *Sandbank,* supra; *Robinson* v. *Rogers,* 237 N.Y. 467, 143 N.E. 647 (1924). One court has noted: "The retaining lien is a judicial device for the protection of the attorney. . . . An attorney should not be permitted to use it wantonly to injure his client." *Steiner* v. *Stein,* supra, 480–81.

it sought and obtained an attachment of $89,000, by way of a prejudgment remedy, on a parcel of real estate owned by the defendant. The plaintiff argues that this claim is not reviewable because this issue is being raised for the first time on appeal. Practice Book § 4185; *State v. Evans,* supra, 69.

Even if we assume that the waiver issue had been properly preserved for appeal, we note that, at oral argument, the defendant conceded that the trial court did not make a finding that the attachment of the defendant's Westport property was adequate security for the payment of the debt claimed. Moreover, the plaintiff maintained at oral argument that in its "opinion" the attachment of the defendant's property did not protect its money judgment because encumbrances on that property exceeded the value of the property. The defendant also conceded at oral argument that, despite her claim that there had been adequate security, she did not ask the trial court to discharge the retaining lien. If a trial court finds that adequate security has been furnished, it should exercise its discretion to order release of the files. See *Eiduson Fuel & Hardware Co.* v. *Drew,* supra. The facts of this case, however, mandate a different result.

## II

The plaintiff has filed a cross appeal in this case, claiming that the trial court erred, first, in excluding evidence of damages for additional counsel fees incurred as a result of the defendant's breach of their contractual agreement and, second, in not charging the jury as to these additional counsel fees.

## A

The plaintiff offered at trial to put into evidence a bill for $23,672.50 for services rendered in connection with the prosecution of this case. The bill consisted of

$3372.50 for the hourly time of David Maclay, a partner in the law firm of the plaintiff, $350 in estimated court costs, and $20,000 for estimated attorney's fees.[6] Upon objection by the defendant's attorney that the bill was self-serving, irrelevant and not previously produced, the trial court ruled that it was inadmissible. The plaintiff claims that the evidence was relevant because it would have aided the jury in determining the balance owed to the plaintiff. Implicit in the plaintiff's claim is that the attorney's fees were damages that arose naturally and generally from the alleged breach of contract. The defendant relies on the rule that unless a contractual agreement clearly specifies payment of attorney's fees and costs, these items may not be recovered as damages.

The defendant conceded at oral argument both the fact that there had been an agreement to pay the plaintiff for legal services rendered to her by it and that the amount owed thereunder is undisputed. The plaintiff's use of *Bradley* v. *Gorham,* 77 Conn. 211, 213, 58 A. 698 (1904), to establish its right to damages is inapposite. There, the exclusion of the postdischarge bill was error because, first, it involved services rendered *before* discharge but billed after discharge and, second, the act of sending the bill was probative of the fact that the plaintiff was claiming a right to a commission for the sale that the bill described. Id. In this case, the bill covered costs incurred by the plaintiff during the course of this litigation and not for predischarge services. In addition, there is no dispute that the legal services claimed by the plaintiff had been performed. Therefore, any evidence offered by the plaintiff on the issue of predischarge services would have been irrelevant to the issue of a recovery for postdischarge services.

---

[6] This figure was arrived at by taking one third of the $60,047.42 recovered in the trial court that the plaintiff was claiming as its fee for the legal services it had rendered to the defendant.

Nevertheless, the plaintiff insists that these attorney's fees arise naturally and generally from the breach of contract by the defendant and that the defendant is therefore liable to pay for them. The damages claimed by the plaintiff, however, are those incurred in this litigation in which the plaintiff is attempting to enforce the fee agreement. The plaintiff's claim, therefore, is essentially indistinguishable from an action to enforce an indemnity agreement. In an indemnity agreement, attorney's fees are awarded for the cost of litigation arising out of the indemnity agreement but not allowed in an action to enforce the agreement itself. *Burr* v. *Lichtenheim,* 190 Conn. 351, 363, 460 A.2d 1290 (1983). The only exception is a specific contractual term to the contrary. Id., 364. The plaintiff was asked at oral argument to distinguish an indemnity agreement from the present case and it conceded that it was unable to do so.

The general rule of law known as the "American rule" is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. See *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Fleischmann Distilling Corporation* v. *Maier Brewing Co.,* 386 U.S. 714, 717, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967). This rule is generally followed throughout the country. See 20 Am. Jur. 2d, Costs § 72. Connecticut adheres to the American rule. See, e.g., *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 14, 513 A.2d 1218 (1986); *Gino's Pizza of East Hartford, Inc.* v. *Kaplan,* 193 Conn. 135, 140, 475 A.2d 305 (1984); *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 280, 297, 472 A.2d 306 (1984); *Litton Industries Credit Corporation* v. *Catanuto,* 175 Conn. 69, 75, 394 A.2d 191 (1978); *Central New Haven Development Corporation* v. *Potpourri, Inc.,* 39 Conn. Sup. 132, 134, 471 A.2d 681 (1983). The only exceptions are a specific

contractual term; see, e.g., *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 245, 440 A.2d 306 (1982); or a statute. See, e.g., General Statutes § 52-240a (attorney's fees may be awarded in a products liability action).

The plaintiff claims that testimony shows that the defendant agreed to pay the plaintiff's hourly rate plus any and all costs and expenses incurred in connection with the plaintiff's activities. The jury found that such an agreement existed and awarded $60,047.42 to the plaintiff for those services. The plaintiff, however, also asserts that the expenses of the litigation enforcing that agreement should be considered as part of the costs and expenses owed thereunder. Under the rule in Connecticut, there must be a specific contractual term that any costs include the cost of litigation to enforce the agreement. *Storm Associates, Inc.* v. *Baumgold,* supra. Here, there is no evidence of a specific contractual term, written or otherwise, that warrants the awarding of attorney's fees for the enforcement of the fee agreement.

The agreement in this case falls within the "American rule" rather than any exception. The agreement to pay the costs and disbursements incurred by the plaintiff refers to those costs and disbursements incurred as a result of the services rendered to the defendant as her attorney, not as a party suing to enforce the agreement itself. Therefore, the trial court's exclusion of the evidence on those additional damages was correct.

B

The plaintiff's second claim of error is the failure of the trial court to charge the jury on the issue of the expenses incurred during the litigation below. Our determination above, that the defendant is not liable for the plaintiff's litigation costs of this action, dem-

onstrates that the trial court's refusal to charge the jury on those additional damages was correct.

There is no error on the defendant's appeal or on the plaintiff's cross appeal.

In this opinion the other justices concurred.