[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has alleged in the Second Count of its Revised Amended Complaint dated July 26, 1990, that on or about April 26, 1989, Ronald A. Stawecki and Timothy T. Keating entered into a Retail Installment Contract (Pl's. Exhibit 5) with the defendant, DiPietro-Kay Corp., which was assigned by DiPietro-Kay Corp. to the plaintiff by a Standard Dealer Assignment (Pl's. Exhibit 3), which was made part of the Retail Installment Contract, and that the plaintiff is the holder and owner of that Retail Installment Contract. The plaintiff further alleges that pursuant to the contract, it extended credit to Stawecki and Keating for the purchase of a boat, trailer and accessories from Di-Pietro-Kay. The plaintiff further alleges that about six months prior to this boat purchase, it had entered into a Standard Dealer's Agreement (Pl's. Exhibit 2) with the defendant, Di-Pietro-Kay. The plaintiff alleges that Di-Pietro-Kay has breached both the Standard Dealer's Assignment Agreement and the Dealer's Agreement, thereby causing various damages.
In the Third Count, the plaintiff claims that certain acts and conduct of the defendant, DiPietro-Kay, constitute deceptive and unfair acts or practices in violation of Conn. General Statutes, Section 42-110b, commonly referred to as CUTPA. CT Page 11108
The defendant has filed a Counterclaim alleging that the plaintiff owes it vessel storage fees and maintenance fees.
The court has reviewed the pleadings, the testimony of the witnesses, and the exhibits placed into evidence, and has evaluated the credibility of the witnesses, and based upon all of that, finds as follows.
On October 14, 1988, the parties entered into a Dealer's Agreement (Pl's. Ex. #2). On April 26, 1989, the defendant sold a boat and accessories to Timothy H. Keating and to a person who falsely stated he was Ronald A. Stawecki, and who forged Mr. Stawecki's signature on the Retail Installment Contract entered into at the time of the closing of the boat sale (Pl's. Ex. #5). This sale was financed by the plaintiff after it approved what was purportedly Mr. Stawecki's credit application, on condition that he would be the primary borrower. The closing took place at the defendant's place of business and was supervised by one of its employees, who failed to verify that the person who said he was Mr. Stawecki, really was. Mr. Stawecki did not sign the contract; an imposter signed his name. After the closing, DiPietro-Kay assigned the Retail Assignment Contract to the plaintiff in accordance with the Standard Dealer's Assignment, together with the warranties and agreements contained therein. Timothy Keating and those with him at the closing took the boat and accessories, and the defendant sent the Retail Installment Contract and related documentation to the plaintiff in accordance with the assignment. Since the plaintiff had financed the sale, payments due under the contract were to be sent to it. The payment schedule called for the first payment on May 26, 1989, and subsequently on the 5th of each month for a total of 180 months. By August, 1989, the plaintiff had not received any payments, so one of its representatives called Mr. Stawecki, who said he didn't know what they were talking about since he had never bought a boat. His lawyer told the plaintiff that he had nothing to do with the boat, had not signed the Retail Assignment Contract, and would pay the plaintiff nothing.
The Standard Dealer's Assignment provides that the defendant warrants that the signatures on the contract are genuine, and the Dealer's Agreement provides that if there is any breach of warranty, the defendant will on demand, repurchase the contract. On August 18, 1989, the plaintiff made written demand on the defendant for repurchase of the contract for the CT Page 11109 repurchase price of $38,76.18 plus $14.66 per diem interest. The defendant has at no time repurchased the contract as demanded. Rudy DiPietro, Vice President of the defendant, testified that the defendant did not repurchase the contract because the signatures were genuine. Ronald Stawecki found out where the boat was, went and got it, and returned it voluntarily to the defendant on or about August 18, 1989. The plaintiff asked the defendant to do what was appropriate to protect the boat from damage and thereby preserve its value.
Inasmuch as Ronald A. Stawecki did not sign the Retail Installment Contract, his purported signature is not genuine and the defendant therefore has clearly and unequivocally breached the warranty contained in the Standard Dealer's Assignment. This breach obligated the defendant to repurchase the Retail Installment Contract upon demand, which was made by the plaintiff. The Repurchase Price is the then unpaid balance of the contract, which is that portion of the amount financed which has not been paid, plus any unpaid earned finance charges and any expenses incurred in enforcing rights under the contract. The court finds the amount financed which has not been paid to be $36,881.30, the interest to the first day of trial to be $17,738.60, the per diem interest to be $14.66, and the expenses incurred to be $1,564.00. The court will not allow an attorney's fee because the contract makes no mention of an attorney's fees in its definition of the Repurchase Price. Connecticut law requires that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a specific contractual term. Marsh, Day and Calhoun v. Solomon, 204 Conn. 639, 652-653 (1987). A specific mention of "expenses" is not a specific mention of attorney's fees. If the plaintiff wished its remedy to include those fees, it would have been a simple matter to specify them.
As to the Second Count, the plaintiff has sustained its burden of proving by a fair preponderance of the evidence that the defendant has breached its warranty in the Standard Dealer's Assignment, and has not fulfilled its obligation under the Dealer's Agreement to repurchase the contract, thereby entitling the plaintiff to damages of $56,183.90 plus $14.66 per day beginning September 17, 1992, until the date of payment. Judgment may enter accordingly.
As to the Third Count, the plaintiff has alleged that the defendant acted in an immoral, oppressive and unscrupulous way, CT Page 11110 in violation of Conn. General Statutes, Section 42-110b, commonly referred to as CUTPA, in that:
1. It should have known that Mr. Stawecki's signature was not genuine.
2. Knowing that his signature was not genuine, it assigned the contact to the plaintiff in violation of its agreement with and warranties to the plaintiff.
3. Notwithstanding its assignment of the contract to the plaintiff with knowledge of the defective signature, and in breach of its agreement with the plaintiff, the defendant completely failed after demand to repurchase the contract from the plaintiff in violation of their agreement.
The plaintiff also alleges that the above acts are deceptive and unfair acts or practices in violation of CUTPA.
Plaintiff's allegations 2 and the first part of 3 (supra) are inapplicable to this CUTPA claim, because the plaintiff did not prove that the defendant knew that Mr. Stawecki's signature was not genuine. As to allegation 1. and the second part of 2., the plaintiff must prove unfair or deceptive acts or practices. The Conn. Supreme Court has set forth the criteria for determining when a practice is unfair:
 "(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;
 (2) Whether it is immoral, unethical, oppressive or unscrupulous;
 (3) Whether it causes substantial injury to consumers [competitors or other businessmen]."
McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 568
(1984). CT Page 11111
The court finds that the plaintiff has failed to prove that the character of the conduct of the defendant brings those acts within the prohibitions of Conn. General Statutes, Section42-110b.
COUNTERCLAIM OF DEFENDANT
The defendant claims that it has incurred vessel storage and maintenance fees because it cleaned, winterized, and stored the subject vessel at the plaintiff's request for over two years.
The court finds that when Ronald A. Stawecki returned the boat to the defendant's yard, this constituted a repossession. Since Plaintiff's Exhibit 4, which is Supplement No. 2 to the Dealer's Agreement, and which was signed by the plaintiff and the defendant, requires "upon the request of Marine Midland Services Corporation, Repossessed Marine equipment, originated by the above named dealer, will be stored at no charge at the dealer location."
Furthermore, any losses sustained by the defendant were the direct result of its failure to verify Mr. Stawecki's signature and its failure to repurchase the Retail Installment Contract as required by the Dealer's Agreement.
The defendant has failed to sustain its burden of proving the allegations contained in its By Way of Counterclaim, and judgment may therefore enter for the plaintiff on this Counterclaim.
Walsh, J.