[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT #155
In January 1992, Paine Webber, Inc., [Paine Webber] instituted this interpleader action in order to determine to whom it should pay the proceeds of a judgment entered against it in favor of Geoffrey J. Winters. The defendants in the interpleader action are Winters and various creditors of Winters who claim an interest in the judgment. In the underlying litigation, Paine Webber's contract claims and Winters' tort counterclaims [contract action] were tried before a jury and in 1989 resulted in a verdict in favor of Paine Webber for $440,000.00 and a verdict in favor of Winters for $440,000.18. Paine Webber sought the entry of separate judgments in order to obtain prejudgment interest, which it received in the amount of approximately $245,000. Paine Webber then moved for a setoff of the two judgments, but the trial court, Thim, J., denied the motion on the ground that it was untimely. CT Page 8940
During the same period, in a separate proceeding, Connecticut Bank Trust initiated a foreclosure action on Winters' home [foreclosure action]. That action resulted in proceeds totalling $1.1 million. Paine Webber, having obtained a prejudgment attachment on Winters' property for $425,000 in its contract action, was third in seniority to receive proceeds from the sale of the property. After payment of the two most senior encumbrancers, $506,565.85 remained from which Paine Webber could collect on its attachment. The trial judge, however, granted an equitable setoff of the Winters and Paine Webber judgments in the other action, reducing the amount Winters owed Paine Webber from approximately $685,000 to approximately $245,000.
The net result of the two setoff decisions was that while the judgment against Winters was reduced by the judgment in his favor, the judgment against Paine Webber was not similarly reduced by the amount of the judgment in its favor. Paine Webber appealed both setoff decisions, ultimately to the supreme court, which addressed both cases in one opinion. See Connecticut Bank Trust Co. v.Winters, 225 Conn. 146, 622 A.2d 536 (1993). The court upheld the trial court's decision to deny Paine Webber's request for setoff in the contract action but declined to decide whether the decision to grant equitable setoff in the foreclosure action was improper because the record did not sufficiently provide a basis for reviewing the trial court's exercise of its equitable discretion. Id., 164-65.
Having been denied the right of setoff in the litigation with Winters, Paine Webber filed the present interpleader action in order to resolve the various claims of Winters' creditors on the judgment. There are five defendants in the interpleader action: Chapman, Moran, Hubbard Zimmermann [Chapman Moran], which claims an interest by virtue of an attorney's charging lien; Weatherly Securities, which claims an interest by virtue of a prejudgment garnishment order; Marchi, Jaffe, Steinberg, Crystal, Katz Burke [Marchi Jaffe], which claims an interest by virtue of a judgment obtained against Winters; Marlow Shields, which claims an interest by virtue of the assignment of the judgment; Jeffrey Katz, who claims an interest by virtue of a judgment against Winters; and Winters himself.
In August 1993, subsequent to the initiation of the interpleader action, Winters filed for bankruptcy in, federal court, effectuating an automatic stay of the state interpleader action. In October 1993, Chapman Moran sought relief from the automatic CT Page 8941 stay in order to pursue the interpleader action. The bankruptcy court, Shiff, J., lifted the stay, allowing the interpleader action in the state court to proceed in order to establish the priority of claims on the interpleader fund.
On May 24, 1994, Marchi Jaffe filed a motion for interlocutory judgment of interpleader. In an order dated June 8, 1994, the court, Fuller, J., granted the motion and ordered Paine Webber to deliver the funds in question to the clerk of the superior court at Bridgeport.
On July 8, 1994, Chapman Moran filed a motion for summary judgment, which also contains its argument supporting the motion, and exhibits. No opposition to the motion was filed. It is noted by the court that the trustee in bankruptcy for Winters' estate [trustee] filed a motion for a continuance on July 21, 1993. In that motion the trustee requests that the court not decide Chapman Moran's motion for summary judgment until the bankruptcy court decides a motion presently before it, which the trustee argues could affect this action. In the motion before the bankruptcy court, the trustee seeks authorization to setoff Paine Webber's claim on Winters' estate in bankruptcy, the attachment, and the judgment Paine Webber owes Winters. Weatherly Securities filed a motion in support of the trustee's motion, dated July 25, 1994. The motion for the continuance was orally argued before the court with the present motion, but was not on short calendar for that day. The motion did appear on the calendar a week later and was again argued before the court, Hauser, J. On August 15, 1994, the court, Ford, J., upon the motion of Chapman Moran and Marlow Shields, struck the appearance of the trustee.
I. Should the court defer decision on the motion for summaryjudgment?
Both the trustee, whose appearance has been struck, and Weatherly Securities, have requested that the court defer its decision on the motion for summary judgment pending the outcome of the motion before the bankruptcy court. In the present case, the bankruptcy court lifted the stay on the interpleader action in order to allow the priority of claims on the fund to be established. The trustee voiced his opposition to lifting the stay in order to allow him to setoff the claims, yet the court granted the motion. The bankruptcy court knew the trustee's strategy, yet ordered the present action to proceed. Therefore, it is clear that the pendency of the motion before the bankruptcy court is not a CT Page 8942 valid basis for continuing the present action. Accordingly, it is found that the court should not defer deciding this motion for summary judgment.
II. May this interpleader action be decided on a motion forsummary judgment?
Pursuant to Connecticut General Statutes § 52-484, any person possessing money which is claimed by two or more persons may bring complaint for interpleader. The purpose of interpleader is to bring all the parties who claim an interest in such money into court in order to obtain a complete resolution of the claims.Bransfield v. Relihan, 2 Conn. L. Rptr. 433, 434 (September 24, 1990, Meadow, J.).
Practice Book § 539 provides in part that: "No trial on the merits of an interpleader shall be had until (1) an interlocutory judgment of interpleader shall have been entered; and (2) all defendants shall have filed statements of claim, been defaulted or filed waivers." The Connecticut Supreme Court has held that the entry of a final judgment is procedurally improper in an interpleader action without the prior entry of an interlocutory judgment of interpleader and the filing of the respective parties' claims. Barnes v. Church, 118 Conn. 521, 526, 173 A.2d 226 (1934).
In the present case, an interlocutory judgment of interpleader has entered. In addition, all named defendants have either answered the complaint and stated their respective claims on the fund or been defaulted. Therefore, the procedural posture of this action is appropriate for a motion for summary judgment, which, if granted, will be a final judgment.
III. Has Chapman Moran met its burden on its motion for summaryjudgment?
"The test [for summary judgment] is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotations marks omitted.) Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 781,595 A.2d 334 (1991). The court should grant summary judgment "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Scinto v.Stamm, 224 Conn. 524, 530, 620 A.2d 99 (1993). CT Page 8943
In its motion for summary judgment, Chapman Moran argues that it has an attorney's charging lien on the judgment against Paine Webber. It points out that the trial court in that action confirmed the lien. Chapman Moran contends that such a charging lien is superior to all other claims on the judgment. Further, Chapman Moran maintains that its lien survives Winters' bankruptcy. Finally, citing a New York case, Chapman Moran asserts that it is appropriate to decide the validity of the charging lien in this interpleader action on a motion for summary judgment.
An attorney's charging lien on a judgment is intended to secure compensation for services rendered to the client. 7 Am.Jur.2d, Attorneys at Law § 324 (1980 Supp. 1993). At common law, the lien gives an attorney the right to recover his fees and the money expended on behalf of the client from a judgment the attorney obtained for the client. Id. Underlying any charging lien must be an express or implied contract for fees entered into by the attorney and client. Id. Such a lien may also be created by a contingency fee agreement in which the parties contract that the attorney's fees will come from the judgment recovered. Id., § 326. Generally, at common law, notice of the lien was not required. Id., § 330. In the absence of statute or agreement indicating otherwise, the lien attaches to the judgment but relates back to the commencement of services. Id., §§ 332, 339.
An attorney's charging lien is not defeated by the assignment of a judgment. Id. at § 338. There is, however, a split among jurisdictions about the effect of a setoff on the attorney's charging lien. Id. § 333. In the context of a bankruptcy proceeding, "[t]he validity and extent of an attorney's lien . . . is determined by state law." In re Life Imaging Corp., 34 B.R. 101,102 (Bkrtcy. 1983). Further, "[a]n attorney's lien which is valid under state law is not extinguished when the client files bankruptcy." Id.
It is noted that Connecticut law concerning attorney charging liens is relatively undeveloped. In Andrews v. Morse, 12 Conn. 444
(1837-38), the court recognized attorneys may have a lien on a judgment "until their fees and disbursements are paid, subject to the equitable rights of others." Id., 446. The court has since recognized the continued vitality of its holding, but has never actually applied the rule again. See Marsh, Day Calhoun v.Solomon, 204 Conn. 639, 644, 529 A.2d 702 (1987); Benjamin v.Benjamin, 17 Conn. 110 (1838). CT Page 8944
It is clear that by virtue of its representation of Winters in the action against Paine Webber, Chapman Moran received a charging lien on the judgment in Winters' favor. The trial court, Harrigan, J., recognized the lien by its order confirming the charging lien, dated May 31, 1989. The lien confirmed, which is based on the contract entered into by Winters and Chapman Moran, is in the amount of $29,419.19 plus 40% of all moneys payable to Winters by Paine Webber. Interest on the charging lien accrues at a rate of $48.22 per diem, totalling $317,130.18 as of July 1, 1994.
Even assuming that Connecticut is among the jurisdictions that find a charging lien inferior to a setoff, it is submitted that such a rule would have no effect in the present case. The decision of the Supreme Court affirming the trial court's denial of Paine Webber's motion for setoff prevents any setoff in this action. In addition, since Connecticut recognizes the lien, it is clear that the lien survives Winters' bankruptcy. Further, it is clear that Winters' purported assignment of the judgment does not affect Chapman Moran's lien.
With its motion for summary judgment, Chapman Moran has submitted as an exhibit a copy of the court's order confirming the charging lien as proof of the lien, as well as an affidavit. In addition, no party has filed opposition to the motion or disputed the validity of the lien, its amount, or its priority. Since the charging lien has priority over other claims to the judgment, it is submitted that no other party has a right superior to Chapman Moran's. Accordingly, it is found that the court should grant Chapman Moran's motion for summary judgment.
Motion is granted.
McGRATH, JUDGE