SHARYN N. D'URSO ET AL. *v.* DEBORAH LYONS, EXECUTRIX (ESTATE OF ROBERT B. D'URSO), ET AL.
(AC 26860)

Bishop, Harper and Dupont, Js.

Argued April 26—officially released August 29, 2006

*Keith P. Sturges*, with whom, on the brief, was *Kenneth A. Votre*, for the appellant (named plaintiff).

*David A. Shaw*, pro se, the appellee (defendant David A. Shaw).

*Opinion*

HARPER, J. The plaintiff Sharyn N. D'Urso[1] appeals from the trial court's judgment affirming the order of the Probate Court. On appeal, the plaintiff claims that the court improperly concluded that an attorney may have a valid charging lien on the proceeds of litigation when the representation was based on an hourly fee agreement. We affirm the judgment of the trial court.

The following facts and procedural history are undisputed. In 1995, the defendant Deborah Lyons,[2] acting in her capacity as trustee for Robert B. D'Urso, instituted an action against Robert D'Urso's sisters, Marion Amendola and Sharon D'Urso, to foreclose a mortgage on real property in New Haven. The mortgage secured a note in the amount of $40,000.

Attorney John J. Resnik represented Robert D'Urso until 1999, when a conflict of interest arose. At that time, the defendant David A. Shaw began representing Robert D'Urso pursuant to a written fee agreement that was executed by Lyons. The fee agreement provided for an hourly billing rate of $200 per hour. Payment was not contingent on the outcome of litigation, and the agreement was silent as to whether the fee would be paid from the proceeds of any recovery.

---

[1] Richard A. D'Urso also was a plaintiff at trial. Because only Sharyn D'Urso has appealed, we refer to her as the plaintiff in this opinion.

[2] The named defendant is referred to as both Deborah Lyons and Deborah Lyon in the record and the parties' briefs. We refer to her as Deborah Lyons because that is the name under which the case was filed. She is not a party to this appeal.

Shaw successfully resolved the litigation. Shortly thereafter, Robert D'Urso died. His estate solely consists of $40,000 that was recovered through the litigation handled by Shaw. Shaw subsequently presented a claim to the Probate Court for attorney's fees in the amount of $12,780. Those fees were wholly attributable to the litigation that Shaw had handled on behalf of Robert D'Urso prior to his death.

The Probate Court concluded that Shaw had a common-law charging lien against the proceeds of the litigation that he had handled for Robert D'Urso and ordered payment of Shaw's claim in full. The trial court affirmed the Probate Court's order. The plaintiff now appeals from the judgment of the trial court.

The plaintiff claims that the court improperly concluded that Shaw had a valid charging lien against the proceeds that were recovered as a result of his representation of Robert D'Urso. She argues that because the applicable fee agreement provided for an hourly rate rather than a contingency fee, there was no basis for a charging lien. In the absence of such a lien, the plaintiff argues that Shaw merely is a general creditor pursuant to General Statutes § 45a-365.[3]

We begin by setting forth our standard of review. Whether Shaw has a common-law charging lien against the proceeds of litigation is a question of law. "When . . . the trial court draws conclusions of law, our

[3] General Statutes § 45a-365 provides: "Claims, expenses and taxes in the settlement of a decedent's estate shall be entitled to preference and payment in the following order of priority: (1) Funeral expenses; (2) expenses of settling the estate; (3) claims due for the last sickness of the decedent; (4) all lawful taxes and all claims due the state of Connecticut and the United States; (5) all claims due any laborer or mechanic for personal wages for labor performed by such laborer or mechanic for the decedent within three months immediately before the decease of such person; (6) other preferred claims; and (7) all other claims allowed in proportion to their respective amounts."

review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Santana* v. *Hartford*, 94 Conn. App. 445, 457, 894 A.2d 307, cert. granted on other grounds, 279 Conn. 901, 901 A.2d 1223 (2006).

Although not often litigated in the courts of Connecticut, the common-law charging lien has been recognized since 1836, when our Supreme Court noted that "[a]n attorney, as against his client, has a lien upon all papers in his possession, for his fees and services performed in his professional capacity, as well as upon judgments received by him." *Gager* v. *Watson*, 11 Conn. 168, 173 (1836). In *Gager*, the court acknowledged the existence of an attorney's retaining lien, which is a possessory lien on a client's papers and files that the attorney holds until his fee has been paid, as well as a charging lien, which is a lien placed on any money recovered or fund due the client at the conclusion of the lawsuit. *Marsh, Day & Calhoun* v. *Solomon*, 204 Conn. 639, 644, 529 A.2d 702 (1987). The Supreme Court further discussed the existence of charging liens in *Cooke* v. *Thresher*, 51 Conn. 105 (1883), in which the court stated: "If an attorney has rendered services and expended money in instituting and conducting a suit and the [client] orally agrees that he may retain so much of the avails thereof as will pay him for his services and expenses therein and for previous services in other matters, and he thereafter conducts the suit to a favorable conclusion, he has, as against such [client], an equitable lien upon the avails for the services and expenses in the suit, and for the previous services embraced in the agreement . . . ." Id., 107.

More recently, this court considered the propriety of an attorney enforcing an equitable lien against a judgment recovered on behalf of a client in *Perlmutter* v. *Johnson*, 6 Conn. App. 292, 505 A.2d 13, cert. denied, 200 Conn. 801, 509 A.2d 517 (1986), cert. denied, 479

U.S. 1035, 107 S. Ct. 886, 93 L. Ed. 2d 839 (1987). In that case, the attorney represented a client in two matters for which he had not been paid completely. Id., 293. Upon recovering a judgment in one of the matters, the attorney placed the funds in escrow and instituted an action against the client for payment of the fees that were due. We affirmed the trial court's judgment, which permitted the attorney to keep the funds as an offset against the fees that he was owed. Relying on *Cooke*, we concluded that "[i]t has long been held that an attorney has an equitable lien upon the avails [of his actions for a client] for the services and expenses in the suit. . . . [The attorney's] undisputed testimony was that he obtained the funds on [the client's] behalf as a result of an action which he undertook as [the client's] attorney. He, therefore, had a lien upon those funds." (Citation omitted; internal quotation marks omitted.) Id., 298.

In the present case, Shaw represented Robert D'Urso in the foreclosure action against his sisters. As a result of that litigation, Shaw obtained a judgment in the amount of $40,000. After Robert D'Urso died, Shaw received the funds pursuant to that judgment. Because he had not been paid for his services at that time, Shaw retained the funds and presented a claim to the Probate Court for attorney's fees. As in *Perlmutter*, Shaw obtained the funds on Robert D'Urso's behalf as a result of the foreclosure action that he undertook as Robert D'Urso's attorney. Shaw, therefore, had a valid charging lien on the proceeds of the foreclosure action in the amount of the attorney's fees to which he was owed pursuant to the fee agreement signed by Lyons.

The plaintiff's claim that an hourly fee agreement may not be the basis for a charging lien is without merit. In *Perlmutter*, the attorney agreed to represent the client pursuant to a fee agreement that provided for an hourly rate of $65 per hour. Id., 297. Consequently, this court's conclusion that a valid charging lien existed in

that case was not dependent on the existence of a contingency fee agreement. We conclude, therefore, that the trial court properly determined that Shaw had a valid charging lien against the proceeds of the litigation that he undertook on Robert D'Urso's behalf.

The judgment is affirmed.

In this opinion the other judges concurred.