[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: POST JUDGMENT MOTIONS OF PETITIONER (NO. 618)
 Motion for Payment of Attorney Charging Lien and Motion to Determine Priority of Lien (October 10, 2000) Motion to Approve Accounting of September 27, 1999, as Updated Renewed Motion to Dismiss (October 10, 2000) Motion for Termination of Automatic Stay (October 10, 2000) BACKGROUND
A dissolution action was filed by Luba N. Hill (hereafter Hill) as against James T. Hill. That matter was returned to court in June of 1991. It went to a contested trial and judgment in March, 1992, at which time the court (Karazin, J.) ordered the sale of the marital home and the payment of various of the couple's debts, after payment of which Hill was to retain 60% of the net proceeds and the husband to retain 40%. On July 3, 1992, the parties entered into a stipulation (which became an order of the court) for the sale of the home at $3.8 million. Thereafter, a myriad of post judgment motions were filed and hearings were held.
Hill was over a period of time represented by numerous lawyers whose services were ultimately terminated; eventually Hill filed a pro se appearance and represents herself this date. Mr. Hill was represented by Cohen Wolf, P.C. from May 15, 1991, until that firm's withdrawal of appearance was granted on February 11, 1997. Hill appealed the order granting the withdrawal of Mr. Hill's counsel and that appeal was dismissed.
Post judgment motions have been heard in various courthouses in this state — in Stamford (originally), New Britain, Litchfield, Hartford, New Haven, and in Bridgeport. At some time or another, twelve (12) or more superior court judges have presided over this case. Hill has taken no fewer than twelve (12) — and perhaps as many as fifteen (15) — appeals to our Appellate Court, all of which have been dismissed; she has penned hundreds of pleadings — often duplicative with only a change in date — over the course of this litigation. As a result, Hill has become angry, personally accusatory of every judge who has issued — or not issued — a ruling or has heard — or refused to hear — any motion. She has openly written of the alleged "corruption" of the judicial system in its handling of the case and has concluded there exists a "conspiracy" between the court and her former husband's counsel to deprive her of monies Hill states she needs. She has had — and has exercised — frequent opportunities to be heard and various of past hearings have consumed many hours and multiple days CT Page 834 of testimony.
Regarding counsel fees owed Cohen Wolf by Mr. Hill, by letter dated October 9, 1997, he agreed that firm (hereafter "Petitioner") would have a charging lien in the amount of $165,000 on the funds the Petitioner was holding as trustee (which funds were as a result of the sale of the marital property) and that that amount would be paid from his share of the escrow funds. On April 4, 2000, the court (Kavanewsky, J.), after hearings, issued an Order for a charging lien in that amount. He also ordered the reserve of $31,520 (ordered by Judge Petroni on April 23, 1995, and May 4, 1995) be maintained (On May 15, 1997, Dranginis, J. ordered those monies be used "for payment of the total arrearage of child support and alimony. . . ."). Kavanewsky, J. also ordered $36,500 be reserved for payment of obligations on a list of creditors submitted May 13, 1997.[1] That Order became final on August 23, 2000. To date, there has been no distribution of the $165,000 and the just referenced two (2) other reserves remain. On April 28, 2000, the court (Kavanewsky, J.) denied Hill's motion for reargument but granted her an additional twenty (20) days to appeal; he also then transferred the case from Stamford to Bridgeport. On May 15, 2000, Hill filed her appeal and, on August 22, 2000, the Appellate Court dismissed that appeal.
On October 10, 2000, the Petitioner filed an Application for Order to Show Cause, Order to Show Cause, and the above referenced motions.[2]
It requested a hearing with regard to payment of the attorney charging lien, permission to pay debts, a renewed motion to dismiss, motion for termination of automatic stay, and approval of account and order of payment of reserves.
The balance of funds held by the Petitioner is $724,447.37. On December 19, 2000, A. Reynolds Gordon, Esq., appeared in argument of these motions. Also on behalf of Petitioner was Richard Albrecht, Esq., who testified to the present amount in escrow (as above), that he prepared the accounting of September 27, 1999, that that accounting was true and accurate, and that all that had occurred from September 27, 1999, to the present was the accrual of approximately $14,000 in interest. He also testified that, since the 1992 stipulation which became an Order of the court, neither Hill nor her former husband had ever filed a capital gains tax return due in April of 1993 though, by extension, could have been filed as late as October 15, 1993.[3] Liability for the tax is not determined for two (2) years pending possible reinvestment and rollover of basis. The reinvestment period ended in October of 1995 without activity. In court a year ago, Mr. Hill again consented to payment of the Petitioner's charging lien from his 40% of funds being held and he stated no form had ever been provided the Internal Revenue Service alerting it to the capital gains event occasioned by the sale of the marital CT Page 835 property. There was, however, a claim for payment of New York State income tax owed, which debt was paid by distribution of funds from Mr. Hill's share of the proceeds. The Petitioner's final accounting of September 27, 1999, updated the accounting submitted Petroni, J. in 1995. That court approved the accounting and reduced the capital gains escrow fund from S709, 000 to $600,000.[4] The present amount of the funds reflects interim interest. On December 19, 2000, Attorney Albrecht also testified he had reviewed all of the objections filed by Hill on October 9, 1999 (regarding a prior filed Application for Order to Show Cause, Order to Show Cause, and attached motions — all substantively similar to the instant motions) and that he stood by the accounting.
NOTICE TO PARTIES
As to Mr. Hill, a supplemental return of service of the Application (and attachments) was made by then Deputy Sheriff N.S. Nikola on November 3, 2000. The documents were sent by certified mail at Mr. Hill's Los Angeles business address which Attorney Albrecht has stated is the address at which Mr. Hill can most easily be contacted. He is now a resident of California. The return receipt card showed receipt by other than Mr. Hill on October 18, 2000.[5] Thereafter, a second supplemental return of service of all such documents was made by then Deputy Sheriff N.E. Nikola (dated November 21, 2000); that established service by certified mail at Mr. Hill's post office box in Los Angeles and the return receipt card contained his signature. Actual notice as to him is found.
As to Hill, then Deputy Sheriff Nikola filed a supplemental return of service stating he forwarded to her by certified mail these documents at her New York, New York, post office box (the address on file with the court and to which prior documents were forwarded, to which documents she has usually responded); on November 21, 2000, he received the return receipt attached to the unopened envelope addressed to her. The postal indication (which accompanied the unsigned green return receipt card) was "unclaimed." Relevant also to the issue of notice to Mrs. Hill is that counsel for the Petitioner sent her by certified mail, return receipt requested, a Notice of Scheduling from the court dated November 3, 2000, advising her these motions were scheduled for a hearing on December 19, 2000, at 10:00 a.m. and that she was to go to the 5th floor of this courthouse for room/judge assignment. On December 14, 2000, Attorney Gordon filed a certificate to which was attached the original envelope addressed to Luba Hill (containing the Notice of Scheduling) and an unsigned return receipt card. The postal designation on the front side of the envelope indicated the mailing was "refused."[6] Mrs. Hill cannot therefore claim she did not know of the hearing date or that these motions would be argued when these certified mailings were "unclaimed" CT Page 836 and "refused." Nor can she argue her address has changed since, having filed a pro se appearance, it was her obligation to keep on file with the court a current address.
As indicated above, the Petitioner had earlier filed the same Application for Order to Show Cause, Order to Show Cause, and attached motions on September 27, 1999.[7] That accounting was approved on September 30, 1999, by Kavanewsky, J. Hill, on October 9, 1999, filed objections to the proposed allocation of funds and the distribution of the escrow account. This court has reviewed those objections and finds them to be duplicative of earlier filed objections and not directed to the substance of the Petitioner's instant motions. In earlier filed pleadings, Hill asserted her need for money for claimed medical, educational, and housing needs, for car repair bills, etc.; in most instances, the pleadings were not accompanied by documentation but instead by listings of expenses incurred. Hill's position has consistently been that these expenses should be paid from Mr. Hill's escrow funds and monies for such expenses should be disbursed before his funds are used in payment of the charging lien.[8]
Hill has therefore been heard — by way of her objections — with regard to the charging lien, the Petitioner's request that the lien be given priority in terms of distribution, its desire the current accounting (different from the prior approved accounting only in the addition of interest) be approved and an Order for payment of reserves, and to the motion to dismiss her previously filed motions. Her Motions for Reargument, Reconsideration, and Articulation (number 602) as well as her Motion to Supplement (number 603) were considered by Kavanewsky, J., denied, and stricken from the short calendar on April 28, 2000. Her appeals from both the Notice of Decision of April 4, 2000, and the Order of April 28, 2000, have been dismissed. There is no entitlement to a rehearing, reargument, or articulation and Hill has asserted no legal authority to support her various motions. The Petitioner has exercised all reasonable means to provide Mrs. Hill the notice dictated by the court;[9] she has thwarted the process by failing to claim the certified mailings of the Petitioner's earlier filed motions and by refusing the certified mailing of the court notice of the date of the scheduled hearing. "One cannot refuse acceptance of notice and then claim that it was not given to him." Stratton v. Abington Mutual Fire Ins.Co., 9 Conn. App. 557, 563 (1987), cert. denied, 203 Conn. 807 (1987). A party "should not be able to defeat service simply by refusing to accept the papers or by instructing others to reject service." Veterans MemorialMedical Ctr. v. Hanson, 1994 Ct. Sup. 11768, 11769-70, judicial district of New Haven at Meriden, (Silbert, J.), November 23, 1994. "When the prescribed modes [of service] have been complied with, the law will presume that actual notice has been given and received (citation omitted) CT Page 837 and it is no defense to a judgment that the defendant was absent from the state when service was made and had no actual notice. . . ." (Citation omitted.) Moore v. Moore, 15 Conn. Sup. 17, 19, N. Haven Super. Ct. (Mellitz, J.), March 5, 1947.
Finally, Hill cannot be heard to claim these motions should not be addressed until all of her motions have been heard, the court (Kavanewsky, J.) having already found those motions could not be decided for her failure to comply with the court's case management orders.[10]
 MOTIONS FOR PAYMENT OF ATTORNEY CHARGING LIEN AND DETERMINATION OF PRIORITY
The fund in question was created in the summer of 1992 pursuant to the judgment of dissolution and the parties' stipulation regarding sale of the marital property. As above stated, Mr. Hill has agreed on numerous occasions both in writing and in court to the $165,000 (a compromise amount) legal fee coming from his 40% of the escrowed monies. The arrearage, found by Novack, J. on December 11, 1996, was satisfied (as per the Order of Kavanewsky, J. on April 8, 1999) by disbursement of $18,525 on April 12, 1999, to Hill from James Hill's share of the funds. There will also continue to be available the amount of $31,520 ordered by Dranginis, J. on April 15, 1997, as enjoined from distribution and to be "used for payment of the total arrearage of child support and alimony" despite the fact there is no presently pending appeal by Mrs. Hill as regards motions numbered 397, 398, and 399 (See referenced Order.).
The original corpus of $709,000 (later reduced to $600,000 by Petroni, J.) was designated in the original judgment to pay the capital gains tax. By their July 2, 1992, stipulation, the parties agreed to escrow the proceeds subject to further order of the court. As earlier stated, there is no evidence either party has filed or intends to file a capital gains return. Seven (7) years have passed without any evidence either party has filed a return reporting sale of the home and a capital gain. Though James Hill has received notice of the Petitioner's Application for Attorney's Charging Lien dated August 28, 1997, which Application alleges in paragraph 15 such return "will not be filed," he has never challenged that assertion. Nor has Luba Hill provided evidence of her having filed the same. At some point in time, the escrow funds must be released. Where an escrow fund is set up to cover a particular event and where it can reasonably be determined that event will not occur, it is appropriate to terminate the fund and order disbursement of the funds. See e.g. Galvanekv. Skibitcky, 1998 WL 305503 (Conn. Super Ct., DeMayo, J.) in which the court reached a similar conclusion with regard to an escrow fund established for payment of a proposed future assessment for repair and/or improvement of an embankment and which the court terminated after the CT Page 838 passage of eleven (11) years, having found there were "no prospects for the work ever being done."
This state has long recognized the attorney charging lien as an equitable lien. See DeWandelaer v. Sawdey, 78 Conn. 654, 658 (1906);Cooke v. Thresher, 51 Conn. 105, 107 (1883). Our Supreme Court has, inMarsh, Day Calhoun v. Solomon, 204 Conn. 639 (1987) quoted approvingly from Andrews v. Morse, 12 Conn. 444 (1838), in stating, "We only say, that [attorneys] have, in certain cases, of which this is one, such a claim upon [judgments and papers] as courts of law and equity will protect and enforce until their lawful fees and disbursements are paid. . . ." 204 Conn. at 644. Mr. Hill has agreed to the charging lien to be disbursed from his share of the funds. That charging lien in the amount of $165,000 was granted by Kavanewsky, J. on April 4, 2000. Hill's appeal of that Order was dismissed. The remaining question then becomes the priority to be given it.
The lien is created at the time of the contract for service and has priority on attachments levied on a judgment by a creditor of the client.Cetenko v. United California Bank, 638 P.2d 1299, 1303 (1975). It has priority over other claims to include an alimony claim. ". . . the attorney's lien enjoys a paramount priority over other claims . . . Should the claim of a creditor, albeit for alimony, be allowed to defeat the attorney's lien, the protection securing the payment of just fees would be defeated (emphasis added)." Spinello v. Spinello, 70 Misc.2d 521,334 N.Y.S.2d 70, 76 (1972)
The court finds the attorney charging lien is valid, the purpose for which the escrow fund was established is no longer viable, the funds should be released, and priority is to be given to that lien. The court orders the charging lien granted the Petitioner in the amount of $165,000 be paid forthwith from the escrow fund and imposed upon James T. Hill's share of such funds. Plaintiff's outstanding motions for payment are dismissed to the extent they seek priority over this lien.
 MOTION FOR APPROVAL OF ACCOUNT/ORDER RE: RESERVES
Having examined the Petitioner's Account dated September 27, 1999, as updated by the Petitioner's affidavit of October 5, 2000, the court finds the Account (number 551) is true and accurate. It is therefore orderedapproved and the objections of Hill (numbered 557, 559) are overruled.
The reserve of $31,520, last ordered by Dranginis, J. on May 15, 1997, is to be paid to the Clerk of this court and held by the Clerk subject to further proceedings and/or further order of this court. CT Page 839
The reserve of $36,500 for payment of obligations regarding creditors yet to be paid shall be utilized to satisfy the claim of the following creditors:
1. Saks Fifth Avenue $ 2,200.00 2. Apex Glass Aluminum 1,000.00 3. Harbor Plumbing 150.00 4. Victor Rakoczy-Gardening 8,000.00 5. Chemical Bank MHT Mastercard 6,400.00 6. Citibank Credit 13,750.00 7. Joint 1990 N.Y. CT Est. Tax 3,000.00 8. Joint 1991 N.Y. CT Est. Tax 2,000.00 ---------- TOTAL $36,500.00
Having found these bills remain from the listing of bills to be paid as contained in the proposed Order of Distribution dated February 13, 1995, and that Petroni, J., by Orders of April 5, 1995, and May 23, 1995, approved the Account and proposed Order of Distribution, the court hereby orders the Petitioner, as Escrowee, to negotiate and/or to pay the items (in an amount not to exceed that set forth above for each such creditor) and/or to determine they no longer need to be paid by virtue of there no longer being any record of the debt and to provide the Clerk of this Court a record of all such payments with documentation of the same. Should there be funds remaining from this reserve of $36,500 after all such creditors have been satisfied, 60% of the remaining funds shall be disbursed to Luba N. Hill and 40% to James T. Hill.
The attached Allocation and Distribution fo [of] Escrow Account is accordingly ordered.
 RENEWED MOTION TO DISMISS
The plaintiff, Luba Hill, has re-filed numerous motions at least as late as April 4, 2000, which motions technically still pend.[11] She had sought to have these motions heard and determined before the court issued an Order regarding payment of the Petitioner's charging lien. This court having ordered the distribution of funds from Mr. Hill's share of proceeds and having determined decisional law establishes priority be given such lien over even secured creditors, the Petitioner's Renewed Motion to Dismiss is in actuality mooted.
With regard to those of Hill's motions not yet heard and determined, it is relevant to state the Petitioner's accounting was approved by the court (Petroni, J.) in 1995, judgment was entered, and Hill's appeal from that judgment was dismissed. It is also worth repeating that Kavanewsky, CT Page 840 J. approved the charging lien (but stayed distribution) on April 4, 2000. Hill's appeal from that Order was likewise dismissed. The appeal of Kavanewsky, J.'s denial of Hills motions for reconsideration, reargument, and articulation has been dismissed. Despite judgments having been final for years in some instances, Hill has moved to reopen those judgments without legal authority to do so. She has failed to comply with the Case Management Order of April 28, 1999 (See Schedule A to Petitioner's memorandum of law in support of this motion.). Furthermore, that which the plaintiff has sought in all such motions — regardless of how styled — is money from Mr. Hill and/or to be taken from his interest in the escrow fund for distribution to her. As such, those motions affect his substantive rights and due process requires notice to him and an opportunity to be heard. See e.g. Caracansiv. Caracansi, 4 Conn. App. 645, 652 (1985). James Hill has been a non-resident of this state for some years now. Connecticut General Statute § 25-28 (b) extends long arm jurisdiction over non-residents regarding modifications of dissolution judgments but requires notice be given. Under that statute, "Any post judgment motion for modification or for contempt or any other motion requiring an order of notice" may be heard once a judge or clerk makes "such order of notice as may be reasonable" and that notice has been "given and proved." Hill has totally disregarded the requirement of notice. Her motions have not been certified to Mr. Hill nor has she ever requested an order of notice. He has no notice of any of Hill's motions after April 4, 1997 (number 473).[12] In the absence of actual notice or an order of notice, Hill's motions are fatally defective. Finally, the vast majority of the motions filed by Hill are now stale. Practice Book section 25-34(c) provides, ". . . Unless for good cause shown, no motion may be reclaimed after a period of three months from the date of filing." Hill's motions from the inception of the case through January 28, 1999, are in violation of that provision since, given the absence of notice to James Hill and Luba Hill's non-compliance with the April 28, 1999, Case Management Order (requiring compliance by May 28, 1999), there can be no "good cause shown."
All pending motions of Hill are hereby ordered dismissed.
 MOTION FOR TERMINATION OF AUTOMATIC STAY
Petitioner has filed a motion to terminate a stay pending appeal with regard to judgments or the determination of priority of the attorney's charging lien over all of the plaintiff's outstanding motions, payment of such lien from the escrow fund, dismissal of Hill's motions, and approval of the Petitioner's Accounting. Practice Book section 61-11(d) permits the filing of such motion before judgment and, if then filed, may be ruled upon when judgment is entered. Hill has filed numerous appeals CT Page 841 throughout the tortured history of this case. All have been unsuccessful In view also of the conduct of Hill (the number and duplication of motions filed, the inflammatory and accusatory content of those motions, her failure to comply with prior court orders as here referenced, her non-compliance with the rules of practice applicable to pro se parties particularly as regards notice to parties, etc.), this court finds any appeal of these orders would be taken only for delay and would frustrate the due administration of justice.
Accordingly, the motion is granted and the automatic stay is ordered terminated.
This court retains supervision of this matter solely for the purpose of monitoring disbursement of the escrow fund reserves in the amount of $31,520 and $36,500.
SO ORDERED.
SHEEDY, J.
$706,472.37 Available balance before $18,525 payment 25,000.00 Add back 1996 payments on arrearage per Judge ----------- Novack's request.
 $731,472.37 Fund available for Distribution before subtraction of payments ($25,000 and $18,525) made out of Defendant's share of escrow.
 LUBA N. HILL JAMES T. HILL
$438,883.42 (60% OF $731,472.37) $292,588.95 (40%)
 (31,520.00) From Luba, SECURITY for personal property (Petroni, J.)
 (11,251.00) From Luba to James 11,251.00 for tax penalties (Petroni, J.)
 ( 6,907.00) 6,907.00 ------------
 Paid to Luba N. Hill from James T. Hill's share: (alimony and support) Kavanewsky, J. 4/8/99 Order (18,525.00)
Paid alimony and support 1996 ( 25,000.00) ------------ CT Page 844 $389,205.42 $267,221.95
 Proof: $389,205.42 Plaintiff 267,221.95 Defendant ----------- $656.427.37 31,520.00 Security ----------- $687,947.37
 Defendant's share of escrow ..........................$267,221.95 Charging Lien .......................................($165,000.00) Balance to Mr. Hill ..................................$102,221.95
PAYMENT:
 Cohen Wolf, P.C. $165,000.00 James T. Hill 102,221.95 Luba N. Hill 389,205.42 ----------- Subtotal $656,427.37
 Plus Security Reserve 31,520.00 Plus Reserve for Liabilities 36,500.00 ----------- TOTAL $724,447.37
ORDER: APPROVED
B.J. SHEEDY, JUDGE