RALPH OLSZEWSKI *v.* JAMES F. JORDAN III ET AL.
(AC 34584)

Beach, Bear and Espinosa, Js.*

---
* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 3—officially released July 16, 2013

*Eric H. Rothauser*, with whom, on the brief, was *John L. Bonee* III, for the appellants (defendant Carlo Forzani et al.).

*Stephen F. McEleney*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The important question raised by this appeal is whether an attorney charging lien can arise by operation of law to be applied to assets or an interest in assets assigned to a party in a dissolution of marriage action. The trial court answered that question in the negative. We disagree and, accordingly, reverse the judgment of the trial court.

In August, 2009, the court rendered a judgment dissolving the marriage of James F. Jordan III and Diana M. Jordan. James Jordan had been represented by the defendant Carlo Forzani, an attorney of the defendant law firm, Carlo Forzani, LLC, in that proceeding.[1] At the time of the dissolution of marriage judgment, James Jordan and Diana Jordan jointly owned, among other assets, an account at Northwestern Mutual (account),

---

[1] James F. Jordan III and Diana M. Jordan were defendants in the underlying action. They are not parties to this appeal, however. We therefore refer in this opinion to the defendants Carlo Forzani and Carlo Forzani, LLC, collectively as the defendants.

from which the dissolution court ordered that 50 percent of the attorney's fees (fees) of the defendants be paid and, after payment of certain other obligations, that the balance remaining in that account be divided equally between James Jordan and Diana Jordan.

While an appeal to this court from the judgment of dissolution was pending,[2] in October, 2009, Ralph Olszewski, the plaintiff in the present case, who is the father of Diana Jordan, brought this action against James Jordan to collect the outstanding balance on James Jordan's promissory note to him.[3] In November, 2009, the plaintiff obtained a prejudgment remedy, which authorized the attachment of the proceeds of the account. In April, 2011, the court rendered judgment in favor of the plaintiff in the amount of $128,135.04. The plaintiff, thereafter, applied for a property execution. Subsequently, pursuant to General Statutes § 52-356c, James Jordan filed a claim for a determination of interests in the account. He asserted that by virtue of the 2009 dissolution judgment, he had a claim to proceeds in that account that was prior in right to that of the plaintiff.[4] The defendants filed a separate claim for determination of interests in the account, alleging that "Carlo Forzani, LLC has a claim prior in right" to the plaintiff's claim by virtue of the dissolution judgment and the "charging lien arising by operation of law" in the dissolution of marriage action.

The court held a hearing to determine the competing claims in the account and, subsequently, concluded that

---

[2] The dissolution of marriage judgment was affirmed on appeal on November 23, 2010. See *Jordan* v. *Jordan*, 125 Conn. App. 207, 6 A.3d 1206 (2010), cert. denied, 300 Conn. 919, 14 A.3d 333 (2011).

[3] On November 24, 2010, the court granted the motion of James Jordan, as a third party plaintiff, to implead Diana Jordan as third party defendant in this action.

[4] James Jordan did not pursue his claim, however, and the court dismissed it.

the defendants had no superior interest in the account by virtue of either an attorney charging lien or the dissolution judgment.[5] Specifically, the court held, inter alia, that a charging lien in connection with a dissolution action would be prohibited by rule 1.5 (d) (1) of the Rules of Professional Conduct, that an attorney must create a new asset for the client before a charging lien can be recognized and that the recognition of a charging lien in a dissolution action would violate public policy. The defendants then filed this appeal.[6]

On appeal, the defendants claim that the trial court improperly held that "an attorney's charging lien is [not] applicable to a marriage dissolution action." The defendants argue that Forzani "acquired a perfected charging lien for the full amount of his fees . . . when he successfully obtained a judgment for his client that included a property distribution award."

Whether an attorney has a common-law charging lien is a question of law. See *D'Urso* v. *Lyons*, 97 Conn. App. 253, 255, 903 A.2d 697, cert. denied, 280 Conn. 928, 909 A.2d 523 (2006). "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) Id., 255–56.

"Although not often litigated in the courts of Connecticut, the common-law charging lien has been recognized since 1836 . . . ." Id., 256. Our common-law charging lien is an equitable lien. "If an attorney has rendered

---

[5] We agree that the orders set forth in the dissolution judgment did not give the defendants a perfected security interest in the account prior in right and time to the plaintiff's court-ordered attachment.

[6] We conclude that the defendants have appealed from a final judgment. See General Statutes § 52-400d (a) ("[a]ny court decision on a determination of interest in property under section 52-356c . . . shall be a final decision for the purpose of appeal").

services and expended money in instituting and conducting a suit and the plaintiff orally agrees that he may retain so much of the avails thereof as will pay him for his services and expenses therein and for previous services in other matters, and he thereafter conducts the suit to a favorable conclusion, he has, as against such plaintiff, an equitable lien upon the avails for the services and expenses in the suit, and for the previous services embraced in the agreement . . . ." *Cooke* v. *Thresher*, 51 Conn. 105, 107 (1883).

" 'An attorney, as against his client, has a lien upon all papers in his possession, for his fees and services performed in his professional capacity, as well as upon judgments received by him.' This quoted passage obviously refers to both retaining liens on papers and charging liens on judgments." *Marsh, Day & Calhoun* v. *Solomon*, 204 Conn. 639, 644, 529 A.2d 702 (1987). "An attorney's retaining lien is a possessory lien on a client's papers and files that the attorney holds until his fee has been paid. . . . A retaining lien differs from a charging lien, which is a lien placed upon any money recovery or fund due the client at the conclusion of suit." (Citations omitted.) Id., 643. "[I]t has long been held that an attorney has an equitable lien upon the avails [of his actions for a client] for the services and expenses in the suit." (Internal quotation marks omitted.) *D'Urso* v. *Lyons*, supra, 97 Conn. App. 257.

Although a charging lien has not been recorded or otherwise been made known to third parties, in some circumstances, such charging lien can have priority over a prejudgment remedy or property execution. "Conflicts between an attorney claiming a charging lien for his fees on a judgment recovered through his efforts and a third-party creditor seeking to satisfy a debt owed by the attorney's client by impressing a lien on the same judgment have usually been resolved by determining which lien first attached to the judgment or its proceeds.

. . . Since an attorney's lien generally attaches to a judgment as of the date the attorney commenced to represent the client in the action which terminates in the judgment, the courts have generally recognized the priority of the attorney's lien over competing liens which were perfected after he commenced his services . . . while upholding the priority of the competing lien which was perfected before the commencement of the attorney's services." (Citations omitted.) Annot., Priority Between Attorney's Lien for Fees Against a Judgment and Lien of Creditor Against Same Judgment, 34 A.L.R.4th 665, § 2 (1984).[7]

In the present case, although recognizing that an attorney in Connecticut may have a right to a charging lien in a civil action, the trial court concluded that such a right could not exist, as a matter of law, in a marital dissolution action. The court specifically determined that such a lien would violate rule 1.5 (d) (1) of the Rules of Professional Conduct and that it would violate the public policy of Connecticut. The court further determined that before a charging lien can be recognized, the attorney must create a new asset, a previously not existing pool of funds for the client, such as occurs, for example, when the client is successful in a personal injury case, but which it determined does not occur when dividing existing marital property pursuant to General Statutes § 46b-81.[8]

Neither of the parties to this case, nor the trial court, has cited any state statute or a case based on the Connecticut common law that holds that a charging lien may not be acquired by an attorney in a dissolution

[7] It is undisputed that the defendants' services for James Jordan commenced before the plaintiff's prejudgment remedy was granted.

[8] A more modern approach may be that what occurs, however, in a successful personal injury case, is the monetization of previously existing "assets," e.g., the plaintiff's injuries and the subsequent personal injury claim against a negligent party.

action as a matter of law. On the basis of the record before us and our independent research, we disagree with the court's analysis and can discern no viable reason why a charging lien should be absolutely prohibited as a matter of law in a marital dissolution action.

As previously set forth in this opinion, the court held that to recognize a charging lien in a dissolution of marriage action would violate rule 1.5 (d) of the Rules of Professional Conduct, which provides: "A lawyer shall not enter into an arrangement for, charge, or collect: (1) Any fee in a domestic relations matter, the payment or amount of which is *contingent upon* the securing of a dissolution of marriage or civil union or upon the amount of alimony or support, or property settlement in lieu thereof . . . ." (Emphasis added.) We conclude that recognizing a charging lien in a dissolution of marriage action would not implicate rule 1.5 (d) (1) because a charging lien would not render the attorney's fee "contingent upon the securing of a dissolution of marriage . . . or upon the amount of alimony or support, or property settlement in lieu thereof . . . ."[9] Rules of Professional Conduct 1.5 (d) (1). Clearly, this rule prohibits an attorney from making his or her fee contingent upon specific outcomes in a dissolution of marriage action. As explained in the official commentary to rule 1.5: "Subsection (d) prohibits a lawyer from charging a contingent fee in a domestic relations matter when payment is contingent upon the securing of a divorce or upon the amount of alimony or support or property settlement to be obtained." W. Horton & K. Knox, 1 Connecticut Practice Series: Connecticut Superior Court Civil Rules (2012–2013 Ed.)

[9] The plaintiff also argues, as he did before the trial court, that a charging lien can be effective only in a case where there is a contingent fee agreement. We note that this contention was addressed and rejected in *D'Urso* v. *Lyons*, supra, 97 Conn. App. 257 (holding that "[t]he plaintiff's claim that an hourly fee agreement may not be the basis for a charging lien is without merit").

Rule 1.5, official comments, p. 23. The recognition of a charging lien, which is a type of security interest, however, would not tie the attorney's fees in a dissolution of marriage action billed at hourly rates or agreed to be a specific amount to the outcome of the case; it merely would allow the attorney to secure payment for services rendered in connection with the dissolution litigation and for the expenses of such dissolution litigation, as in other litigation. See *D'Urso* v. *Lyons*, supra, 97 Conn. App. 257.

After considering rule 1.5 and other rules of professional conduct, we conclude that rule 1.8 (i) (1) permits a charging lien in connection with a dissolution action. Rule 1.8 (i) provides: "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may: (1) Acquire a lien granted by law to secure the lawyer's fee or expenses . . . ." This rule thus specifically recognizes that an attorney may acquire a charging lien, a lien granted by our common law, in connection with litigation, and it contains no specific prohibition against such a lien in connection with dissolution of marriage litigation.

We also disagree with the court's conclusions that to recognize a charging lien in a dissolution of marriage action would violate public policy and that such a lien could not be recognized because the attorney must create a "new" asset before a charging lien can be acquired.[10] That is not the statutory or common law recognized in a majority of the states. In approximately thirty-two states, as of 1982, attorney's liens were a creature of statute. W. Hairston III, "The Ranking of Attorney's Liens Against Other Liens in the United States," 7 J. Legal Prof. 193 (1982). In New York, attorney's liens are governed by N.Y. Judiciary Law § 475

---

[10] See our previous discussion of this issue in this opinion.

(McKinney 2013), which provides: "From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien."

A charging lien in New York "attaches at the commencement of an action or proceeding. . . . There is no requirement of docketing or filing in order to perfect a charging lien. Nor is it necessary for the attorney to give notice of his claim to the adverse party to protect his lien. An attorney can, however, be held to have waived the lien by his failure to assert it within a reasonable period of time." D. Freed et al., "Attorney's Liens," N.Y.L.J., Vol. 205, Issue 121, June 25, 1991, p. 8. With respect to a lien against the proceeds of a property distribution, "[a]lthough an attorney's charging lien does not attach to an award of alimony or maintenance, nothing in the Judiciary Law precludes enforcement of a charging lien upon a distributive award . . . ." Id.

In many, if not all, of the remaining states, charging liens are recognized under the common law, but some states also protect alimony and support awards from such liens; see W. Hairston, supra, 195–96; but not "funds which counsel has obtained for the client

through litigation." Annot., Alimony or Child-Support Awards as Subject to Attorneys' Liens, 49 A.L.R.5th 595, 595 (1997). "Most jurisdictions provide attorneys with either common-law or statutory liens for fees against various interests of clients they have previously represented. These liens can attach as an encumbrance to materials left in the attorney's possession or against funds which counsel has obtained for the client through litigation. Policy considerations and, to a lesser extent, statutory construction have led many jurisdictions to exempt awards of alimony or child support from the operation of such liens. However, some jurisdictions, as in the case of *Jasper* v. *Smith* [540 N.W.2d 399 (S.D. 1995)], 49 A.L.R. 5th 833, have permitted these types of liens to attach to judgments of support." Annot., 49 A.L.R.5th, supra, p. 595.

An attorney usually is entitled to the assistance of the court to enforce a common-law charging lien. "A special, or charging, lien may . . . be available to an attorney who has obtained a judgment, decree, or award for his or her clients. This lien generally gives an attorney the right to recover his taxable costs, fees, and money expended on behalf of the client from a fund recovered by his aid, and the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of the attorney's right to it. The lien is not dependent on possession as in the case of a retaining lien. Counsel must, instead, take affirmative action to enforce it." Id., § 2 [a], p. 603.

There is no statutory basis for an attorney's lien in Connecticut, and the defendants do not claim that an express agreement is the basis for the alleged charging lien;[11] they claim, instead, that the lien arises by "operation of law." Therefore, it is instructive to look to this

---

[11] We do note that an express agreement between the defendants and James Jordan, dated October 28, 2009, after the judgment of dissolution was rendered and before judgment was rendered in the present case, was submitted to the trial court. No argument is made on appeal that this document has any relevance. Accordingly, we do not consider it.

state's equitable lien jurisprudence to determine under what circumstances such a lien will arise by operation of law. An equitable lien "is a right over the thing with which the contract deals, by means of which the obligee is enabled to follow the identical thing to which the lien attaches and enforce the obligation by a remedy which operates directly upon that thing. Therefore, in order that it may arise, the agreement must deal with some specific property, such as a tract of land or particular chattels or securities, and identify it or so describe it that it can be identified." (Internal quotation marks omitted.) *Bassett* v. *City Bank & Trust Co.*, 116 Conn. 617, 631, 165 A. 557 (1933). In *Bassett*, the City Bank & Trust Company acquired the distressed Mutual Bank & Trust Company, assuming its assets and liabilities. Id., 620–21. The president of the City Bank & Trust Company promised a creditor of the Mutual Bank & Trust Company that any judgment recovered in the creditor's action to collect missed rent payments would be paid " 'out of assets' of Mutual in City's hands." Id., 631. The court held that this promise by the bank was not sufficiently precise to establish an equitable lien; "[s]ince payment [to the creditor] might be made out of any of the assets of Mutual, the res to which an equitable lien might attach [was] wanting . . . ." (Internal quotation marks omitted.) Id.

Thus, according to *Bassett*, for an equitable lien to arise there must be an intention by the parties that specific property will secure the obligations in the contract. See id.; see also *Connecticut Co.* v. *New York, New Haven & Hartford Railroad Co.*, 94 Conn. 19, 33–34, 107 A. 646 (1919) ("[i]n order . . . that [an equitable] lien may arise . . . the agreement must . . . indicate with sufficient clearness an intent that the property so described or rendered capable of identification is to be held, given or transferred as security for the obligation" [internal quotation marks omitted]). The

requisite intent does not depend on the express assertion of a security interest. "It may arise from circumstances of such nature as to require the presumption, upon general considerations of justice as between those conducting commercial transactions according to a reasonable standard of integrity, that an equitable lien was meant. . . . If the arrangement between the parties, interpreted in the light of the conditions in which they were placed, indicates a contemporaneous intention to adjust their rights upon a basis which can be established only by resort to the equitable principle of lien or pledge, then, in the absence of an intervening adversary interest, such an intent will be [enforced by the court]." (Internal quotation marks omitted.) Id., 34.

An equitable charging lien will arise when the arrangement between the attorney and client intends that a lien exist on the proceeds of the action. In *DeWandelaer* v. *Sawdey*, 78 Conn. 654, 658, 63 A. 446 (1906), for example, our Supreme Court held that an equitable lien arises when an attorney " '[takes] up a case' with the understanding that he must look to the judgment to be obtained for compensation for his services and disbursements." Indeed, the court in *DeWandelaer* observed that such a practice is "not uncommon." Id. Under these circumstances, the arrangement between the attorney and the client, "interpreted in the light of the conditions in which they were placed," contains an implicit intention that the proceeds of the judgment will secure the attorney's payment. *Connecticut Co.* v. *New York, New Haven & Hartford Railroad Co.*, supra, 94 Conn. 34; see also *Wolf v. Sherman*, 682 A.2d 194, 200 (D.C. 1996) (whether equitable attorney's lien arises depends on "whether the agreement and surrounding circumstances sufficiently indicated that the parties looked to a particular source for payment of the [attorney's] fee").

Cases from other jurisdictions similarly recognize that a charging lien arises by operation of law when the parties have agreed, explicitly or implicitly, that the attorney's fee will be secured by proceeds of the litigation. See, e.g., *Recht* v. *Urban Redevelopment Authority*, 402 Pa. 599, 608, 168 A.2d 134, 139 (1961) (charging lien will arise only when "it was agreed that counsel look to the fund rather than the client for his compensation"); *Linder* v. *Lewis, Roca, Scoville & Beauchamp*, 85 Ariz. 118, 123, 333 P.2d 286 (1958) ("it must appear that the parties looked to the fund itself for the payment of the attorney"); *In re Heinsheimer*, 214 N.Y. 361, 368, 108 N.E. 636 (1915) (Cardozo, J.) ("[a] charging lien cannot exist unless it is an element, express or implied, of the agreement that the lawyer is to be paid out of the fruits of the judgment"); cf. 7 Am. Jur. 2d 354, Attorneys at Law § 319 (2007) ("[w]here the parties contract that the attorney will receive his or her fee from the amount recovered, the agreement creates an equitable lien").

The circumstances of each dissolution action, then, must be considered by the court in whether to find the existence of an equitable charging lien. At the outset of a marital dissolution action, it may be difficult to predict exactly how all of the parties' property will be divided between them. See *Casey* v. *Casey*, 82 Conn. App. 378, 386–87, 844 A.2d 250 (2004) ("[i]t is . . . well settled . . . that there is no set formula the court is obligated to apply when dividing the parties' assets and that the court is vested with broad discretion in fashioning financial orders"). Under these circumstances, an agreement between an attorney and client may not specifically "deal with some specific property," to which the attorney can look to secure his or her payment. See *Bassett* v. *City Bank & Trust Co.*, supra, 116 Conn. 631. Typically, at the initiation of the representation, a party in a matrimonial action can promise,

at most, to pay his or her attorney out of any assets he or she retains, but such a promise may not in all circumstances be able to include an identification of property sufficient to be the basis of an equitable lien.[12] Cf. id. (requiring agreement to deal with specific, identified property). A matrimonial action is different in this regard from, for example, a personal injury action with a contingent fee arrangement, where the identification of the asset, e.g., the proceeds of any recovery, is clear both to the attorney and to the client. These foregoing issues and determinations, however, are factual rather than legal, and can be decided by the court when the claim of a charging lien is advanced.

Other state law is instructive. In Florida, like Connecticut, for example, common-law charging liens have been recognized for more than 150 years. See *D'Urso* v. *Lyons*, supra, 97 Conn. App. 256, citing, e.g., *Gager* v. *Watson*, 11 Conn. 168, 173 (1836); *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A.* v. *Baucom*, 428 So. 2d 1383, 1384 (Fla. 1983), citing, e.g., *Carter* v. *Davis*, 8 Fla. 183 (1858), and *Carter* v. *Bennett*, 6 Fla. 214 (1855); *Randall* v. *Archer*, 5 Fla. 438 (1854). To impose a charging lien in Florida, the attorney must demonstrate that she had an express or implied contract with the client, that she had an express or implied understanding for payment of fees out of the recovery secured in the action, that the client either disputed or avoided payment of the fee and that there was timely notice of the charging lien by either filing a notice of lien or by otherwise pursuing the lien in the original action. *Daniel Mones, P.A.* v. *Smith*, 486 So. 2d 559, 561 (Fla. 1986). In a Florida dissolution of marriage action, property awarded to a client as an equitable distribution of property is considered a proceed to

[12] In some cases, however, because of a limited number of liquid assets, or assets easily converted to liquid assets, it may be easier to identify likely assets to which a charging lien may attach.

which a charging lien can attach. *Rudd* v. *Rudd*, 960 So. 2d 885, 887 (Fla. App. 2007). For policy reasons, however, alimony and child support awards are not considered proceeds against which a charging lien can be enforced. *Litman* v. *Fine, Jacobson, Schwartz, Nash, Block & England, P.A.*, 517 So. 2d 88, 92 (Fla. App. 1987).

As previously set forth, in Connecticut, attorney charging liens have been recognized at least since 1836, in the case of *Gager* v. *Watson*, supra, 11 Conn. 168. Although our courts have not developed a considerable body of law on this issue, they consistently have held that an attorney has a charging lien on any money recovered or fund due the client at the conclusion of suit, provided the recovery was secured through the attorney's efforts. See *Cooke* v. *Thresher*, supra, 51 Conn. 107; *Marsh, Day & Calhoun* v. *Solomon*, supra, 204 Conn. 644; *D'Urso* v. *Lyons*, supra, 97 Conn. App. 257. Further, although the issue of a charging lien in a dissolution of marriage action does not appear to have been addressed directly by an appellate court in Connecticut, we are aware of one Superior Court case in which a charging lien was recognized in a such an action. See *Hill* v. *Hill*, Superior Court, judicial district of Fairfield, Docket No. FA-91-0374254-S, 2001 WL 179781, *5 (January 8, 2001), aff'd, 75 Conn. App. 902, 818 A.2d 901 (per curiam), cert. denied, 264 Conn. 911, 826 A.2d 1155 (2003).[13]

---

[13] Because the judgment of the trial court in *Hill* summarily was affirmed on appeal, there was no written decision by this court. A review of the issues raised on appeal in that case reveals that the plaintiff's first issue was whether "the trial court err[ed] in finding that the attorney charging lien [was] valid." *Hill* v. *Hill*, Conn. Appellate Court Records & Briefs, March Term, 2001, Plaintiff's Brief, Statement of the Issues, p. 4. Our summary affirmance of the court's judgment has no precedential effect.

We also are aware of another Superior Court case where the court upheld an attorney's right to place a mortgage on the marital home of his client as security for the attorney's legal fees in a dissolution of marriage action. See *Kelly* v. *Kelly*, Superior Court, judicial district of Hartford, Docket No. FA-

With respect to the defendants' assertion of a charging lien, the trial court is in the best position to "take into account the whole contract and the manifest intention of the parties . . . ." *Connecticut Co.* v. *New York, New Haven & Hartford Railroad Co.*, supra, 94 Conn. 32.[14] In doing so, on remand, the court should consider, inter alia, whether there is a written or oral agreement for the charging lien, the timing thereof with respect to any third party claim to the same proceeds, and any relevant history of the relationship between the relevant parties, in this case, the defendants and James Jordan. Additionally, the court should consider all other pertinent facts and appropriate equitable considerations in determining whether the arrangement between the defendants and James Jordan establishes the defendants' intention to look specifically to the account, and not to James Jordan personally, for some or all of the payment of James Jordan's obligation to them. The foregoing considerations will enable the court to determine whether the claimed charging lien should be enforced, in whole or in part, against specific assets.

On the basis of the foregoing, we conclude that under some circumstances an attorney may acquire a charging lien in a dissolution of marriage action and that the trial court erred in holding otherwise as a matter of law.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion BEACH, J., concurred.

08-4040118-S (August 12, 2009) (48 Conn. L. Rptr. 333). A mortgage, however, is not a type of charging lien.

[14] The "whole contract and the manifest intention of the parties"; *Connecticut Co.* v. *New York, New Haven & Hartford Railroad Co.*, supra, 94 Conn. 32; could include the terms both of the retention agreement and any charging lien, even if such lien was not contemporaneously entered into with such retention agreement.

ESPINOSA, J., dissenting. In this case of first impression, the defendants Carlo Forzani and Carlo Forzani, LLC,[1] claim that they were entitled to an equitable charging lien for their attorney's fees that arose by operation of law when they obtained a judgment for their client in the underlying marital dissolution action. The majority concludes that the defendants may be able to acquire an equitable charging lien if, on remand, the trial court makes certain findings that demonstrate that the parties had intended for the attorney's fees of the defendants to be paid from particular assets divided as part of the judgment. Respectfully, I disagree with the majority's conclusion and, in light of prevailing principles of public policy, conclude that the defendants should be precluded from asserting such a lien on a judgment in a marital dissolution action. I agree with the conclusion of the trial court that the defendants are not entitled to an equitable charging lien, however, I disagree with its reasoning in reaching its conclusion. I, therefore, respectfully dissent from the majority and would affirm the judgment of the trial court on the following alternate grounds.[2]

Neither this court nor our Supreme Court has squarely addressed the issue of whether an attorney may acquire an equitable charging lien in a dissolution action. As a result, in concluding that such a charging lien is permissible under certain circumstances, the majority relies heavily on the law of other states, secondary sources and an analogy that it draws between dissolution actions and other general civil actions in Connecticut.[3] Preliminarily, most of the cases from

[1] James F. Jordan III and Diana M. Jordan were also defendants in the underlying action. Because they are not parties to this appeal, for convenience, we refer to Carlo Forzani and Carlo Forzani, LLC, as the defendants.

[2] Because I agree with the majority's recitation of the facts, they need not be reiterated here.

[3] The majority also has concluded that rule 1.8 (i) (1) of the Rules of Professional Conduct permits an attorney to assert a charging lien in a dissolution action. Rule 1.8 (i) provides in relevant part: "A lawyer shall not

jurisdictions other than Connecticut cited by the majority have dealt with charging liens only in the context of general civil actions and, therefore, fail to consider the unique policy concerns raised by the payment of an attorney's fee in a dissolution action. Moreover, the cases cited that have addressed charging liens in dissolution actions are distinguishable from the present case. See, e.g., *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A.* v. *Baucom*, 428 So. 2d 1383, 1384 (Fla. 1983) (evaluating validity of attorney charging lien asserted against *settlement proceeds*). Accordingly, I find the majority's reference to the law of other states to be unpersuasive.

Similarly, the majority has cited no Connecticut case with precedential value in which an equitable charging lien in a dissolution action has been upheld and, instead,

acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may: (1) Acquire a lien granted by law to secure the lawyer's fee or expenses . . . ." Effectively, the majority concludes that the absence of an express prohibition in the rule against an equitable charging lien in a dissolution of marriage action indicates that such liens are permissible. I respectfully disagree in light of the language of the official commentary for rule 1.8. The official commentary for rule 1.8 (i) provides in relevant part: "Subsection (i) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. . . . In addition, subsection (i) sets forth exceptions for liens authorized by law to secure the lawyer's fees or expenses and contracts for reasonable contingent fees. *The law of each jurisdiction determines which liens are authorized by law.* These may include liens granted by statute, liens originating in common law and liens acquired by contract with the client." (Emphasis added.) As I noted previously, there does not appear to be any Connecticut precedent that directly has addressed whether an attorney may assert an equitable charging lien in a marital dissolution action; nor is there any state statute governing this issue. For the reasons set forth in this dissent, I believe that the public policy underlying rule 1.5 (d) (1) as previously expressed by this court in *Gil* v. *Gil*, 110 Conn. App. 798, 804–805, 956 A.2d 593 (2008), should preclude the defendants from asserting such a lien. Under this analysis, an equitable charging lien in a marital dissolution action would not be authorized by Connecticut law and, therefore, would not be the type of permissible lien contemplated by rule 1.8 (i) (1).

analogizes to general civil actions that have recognized the validity of such liens. See, e.g., *D'Urso* v. *Lyons*, 97 Conn. App. 253, 903 A.2d 697, cert. denied, 280 Conn. 928, 909 A.2d 523 (2006); *Perlmutter* v. *Johnson*, 6 Conn. App. 292, 298, 505 A.2d 13, cert. denied, 200 Conn. 801, 509 A.2d 517 (1986), cert. denied, 479 U.S. 1035, 107 S. Ct. 886, 93 L. Ed. 2d 839 (1987). I am not persuaded by the majority's analogy because frequently, as in this case, the issues and policy concerns raised in dissolution actions are inherently different from other civil actions. In particular, because of the unique issues presented in domestic relations matters, there is a heightened aversion to arrangements in which an attorney gains any pecuniary interest by virtue of the judgment rendered in a dissolution action.

Rule 1.5 (d) of the Rules. of Professional Conduct provides in relevant part: "A lawyer shall not enter into an arrangement for, charge, or collect: (1) Any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a dissolution of marriage or civil union or upon the amount of alimony or support, or property settlement in lieu thereof . . . ." The plain language and official commentary to the rule indicate that rule 1.5 specifically prohibits contingency fee arrangements in dissolution actions; the rule and its commentary, however, are silent regarding the permissibility of charging liens. Accordingly, unlike the trial court, I do not read the express language of rule 1.5 (d) (1) as prohibiting an attorney from asserting a charging lien in a dissolution action. I do, however, believe that the defendant should be precluded from asserting an equitable charging lien on the judgment in a dissolution action in light of the public policy underlying rule 1.5 (d) (1). This court previously has explained that "[t]he main policy concern behind rule 1.5 (d) is that contingency agreements for a dissolution action

would discourage lawyers from advocating for an amicable settlement because the lawyers would have a *pecuniary interest* in the outcome of the dissolution action." (Emphasis added.) *Gil* v. *Gil*, 110 Conn. App. 798, 804–805, 956 A.2d 593 (2008).

In rejecting the trial court's conclusion that the recognition of a charging lien in a dissolution action would violate rule 1.5 (d) (1), the majority states that "[t]he recognition of a charging lien . . . would not tie the attorney's fees in a dissolution of marriage action . . . to the outcome of the case . . . ." While I agree that such a lien does not violate the express terms of the rule, I respectfully disagree with the majority's assertion as it applies to this case because the charging lien sought by the defendants, by necessity, tied the defendants' ability to obtain their fee to the outcome of the case. This court previously has described a charging lien as "a lien placed upon any money recovery or fund due the client *at the conclusion of suit.*" (Emphasis added.) *Marsh, Day & Calhoun* v. *Solomon*, 204 Conn. 639, 643, 529 A.2d 702 (1987). The defendants claim that they obtained a perfected charging lien by operation of law when they "successfully obtained a judgment for [their] client that included a property distribution award." On the basis of their own argument, the defendants' ability to assert a charging lien was predicated on the court first rendering a judgment of dissolution accompanied by certain financial orders. Therefore, even in the absence of a contingency fee arrangement, the defendants still had a pecuniary interest in the outcome of the dissolution action. As a result, I believe that allowing the defendants to assert an equitable charging lien against the judgment in a marital dissolution action would undermine the public policy concern underlying rule 1.5 (d).

Because the defendants' ability to obtain their fee by way of the equitable charging lien they assert would be

dependent on the court first rendering a judgment of dissolution, this type of lien poses the same risk presented by a contingency fee arrangement. Although the interest does not directly relate to the amount of a fee, it nonetheless is significant in that it directly relates to an attorney's ability to recover his fee. Allowing attorneys to assert an equitable charging lien against judgments in marital dissolution actions presents an inherent danger of discouraging them from advocating for amicable settlements for their clients as they could not assert such a lien if the parties determined that settlement, rather than a judgment of dissolution with corresponding financial orders, was in their best interest. Accordingly, I would conclude that the same policy concern underlying the prohibition against attorneys entering into contingency fee arrangements in dissolution actions likewise should counsel against recognizing such a lien in the present type of case and thus prohibit the defendants from asserting an equitable charging lien against the dissolution judgment in this case.[4]

For the foregoing reasons, I would affirm the judgment of the trial court.

---

[4] My conclusion in this dissent is confined to equitable charging liens asserted against judgments in marital dissolution actions in light of the unique policy concerns raised by dissolution actions. I do not question the legitimacy of an otherwise valid equitable charging lien in the context of other types of civil actions.