******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RALPH OLSZEWSKI *v.* JAMES F.
JORDAN III ET AL.
(SC 19215)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Robinson and Vertefeuille, Js.

*Argued December 2, 2014—officially released March 3, 2015*

*Stephen F. McEleney*, with whom were *David J. Taylor* and *Emily Peterson*, for the appellant (plaintiff).

*Eric H. Rothauser*, with whom, on the brief, were *John L. Bonee III* and *Lee B. Ross*, for the appellees (defendant Carlo Forzani et al.).

*Opinion*

ZARELLA, J. The principal issue in this appeal is whether attorneys are entitled by operation of law to equitable charging liens against marital assets for fees and expenses incurred in obtaining judgments for their clients in marital dissolution actions. The plaintiff, Ralph Olszewski, challenges the Appellate Court's conclusion that equitable charging liens are permissible in marital dissolution actions in Connecticut. He claims that they are barred by the Rules of Professional Conduct, they are not supported by Connecticut precedent, and the public policy considerations that justify equitable charging liens in other contexts do not apply in marital dissolution actions. The defendants Carlo Forzani and Carlo Forzani, LLC,[1] respond that equitable charging liens against marital assets are permissible in Connecticut because the Rules of Professional Conduct specifically provide for charging liens, the rules do not preclude the use of charging liens in marital dissolution actions, and public policy considerations support their use in domestic relations matters. We agree with the plaintiff and reverse the judgment of the Appellate Court.

The following facts and procedural history are set forth in the Appellate Court's opinion. "In August, 2009, the [dissolution] court rendered a judgment dissolving the marriage of [James Jordan and Diana Jordan]. James Jordan had been represented by . . . Carlos Forzani, an attorney of the . . . law firm, Carlo Forzani, LLC, in that proceeding. At the time of the dissolution of marriage judgment, James Jordan and Diana Jordan jointly owned, among other assets, an account at Northwestern Mutual (account), from which the dissolution court ordered that 50 percent of the attorney's fees (fees) of the defendants be paid and, after payment of certain other obligations, that the balance remaining in that account be divided equally between James Jordan and Diana Jordan.

"While an appeal to this court from the judgment of dissolution was pending, in October, 2009, [the plaintiff], who is the father of Diana Jordan, brought this action against James Jordan to collect the outstanding balance on James Jordan's promissory note to him. In November, 2009, the plaintiff obtained a prejudgment remedy, which authorized the attachment of the proceeds of the account. In April, 2011, the [trial] court [found] in favor of the plaintiff in the amount of $128,135.04. The plaintiff, thereafter, applied for a property execution. Subsequently, pursuant to General Statutes § 52-356c, James Jordan filed a claim for a determination of interests in the account. He asserted that by virtue of the 2009 dissolution judgment, he had a claim to proceeds in that account that was prior in right to that of the plaintiff. The defendants filed a separate claim for [a] determination of interests in the

account, alleging that 'Carlo Forzani, LLC ha[d] a claim prior in right' to the plaintiff's claim by virtue of the dissolution judgment and the 'charging lien arising by operation of law' in the dissolution of marriage action.

"The court held a hearing to determine the competing claims in the account and, subsequently, concluded that the defendants had no superior interest in the account by virtue of either an [attorney's] charging lien or the dissolution judgment. Specifically, the court held, inter alia, that a charging lien in connection with a dissolution action would be prohibited by rule 1.5 (d) (1) of the Rules of Professional Conduct, that an attorney must create a new asset for the client before a charging lien can be recognized and that the recognition of a charging lien in a dissolution action would violate public policy." (Footnotes omitted.) *Olszewski* v. *Jordan*, 144 Conn. App. 144, 146–48, 71 A.3d 1276 (2013). The defendants appealed to the Appellate Court, which reversed the trial court's judgment. Id., 148, 160.

The Appellate Court explained that it could "discern no viable reason why a charging lien should be absolutely prohibited as a matter of law in a marital dissolution action." Id., 151. The court stated that "recognizing a charging lien in a dissolution of marriage action would not implicate rule 1.5 (d) (1)"; id.; and "that rule 1.8 (i) (1) permits a charging lien in connection with a dissolution action." Id., 152. The court further stated that an attorney need not create a new asset before a charging lien can be acquired; id.; and that this state's equitable lien jurisprudence supports the view that equitable charging liens may arise by operation of law in marital dissolution actions "when the arrangement between the attorney and client intends that a lien exist on the proceeds of the action." Id., 156. The court thus concluded that, "under some circumstances an attorney may acquire a charging lien in a dissolution of marriage action and that the trial court erred in holding otherwise as a matter of law." Id., 160. The court thereafter remanded the case to the trial court to consider whether the agreement between James Jordan and the defendants established that the defendants intended to look specifically to the funds in the jointly owned account as the source of future payment of their fees. Id., 160. In a dissenting opinion, Judge Espinosa concluded that an attorney may not acquire an equitable charging lien in a marital dissolution action and that the trial court's judgment should be affirmed. Id., 161, 165 (*Espinosa, J.*, dissenting). This appeal followed.[2]

We begin by setting forth the applicable standard of review. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *D'Urso* v. *Lyons*, 97 Conn. App. 253, 255–56, 903 A.2d 697, cert. denied,

280 Conn. 928, 909 A.2d 523 (2006). Accordingly, whether the plaintiff in the present case is entitled by operation of law to an equitable charging lien against James Jordan's marital assets for fees and expenses incurred in obtaining the judgment of dissolution is a question of law subject to our plenary review. See id., 255.

The concept of an attorney's charging lien is rooted in common law and is "founded on the equitable right of an attorney to recover . . . fees and costs due . . . for . . . services out of the judgment . . . obtained. Thus, an attorney's charging lien does not merely give the attorney an enforceable right against the property of another, but rather it gives the attorney an equitable ownership interest in the client's cause of action, and the client's property right in his or her own cause of action is only what remains after transfer to the attorney of the attorney's agreed-on share." (Footnote omitted.) 7 Am. Jur. 2d 352, Attorneys at Law § 317 (2007). An attorney's charging lien is distinguishable from an attorney's retaining lien, which is "a possessory lien on a client's papers and files that the attorney holds until his fee has been paid." *Marsh, Day & Calhoun* v. *Solomon*, 204 Conn. 639, 643, 529 A.2d 702 (1987).

Although there is no statutory basis for an attorney's charging lien in Connecticut, as there is in many states; see 7 Am. Jur. 2d, supra, § 318, p. 353 (authority for charging lien in many states rests entirely on statutes); see also W. Hairston, comment, "The Ranking of Attorney's Liens Against Other Liens in the United States," 7 J. Legal Prof. 193, 193–95 (1982) (attorney's liens are creatures of statute in thirty-two states); this court expressly recognized the common-law basis for an attorney's charging lien nearly 180 years ago in *Gager* v. *Watson*, 11 Conn. 168, 173 (1836).[3] In *Gager*, we established the principle that "[a]n attorney, as against his client, has a lien upon all papers in his possession for his fees and services performed in his professional capacity, as well as upon judgments received by him." Id. This principle was affirmed in *Andrews* v. *Morse*, 12 Conn. 444 (1838), in which we reiterated that "attorneys . . . have, in certain cases . . . a claim upon [the judgments and papers of their clients] as courts of law and equity will protect and enforce, until their lawful fees and disbursements are paid . . . ." Id., 446.

Almost one-half century later, we concluded, without reference to *Gager* and *Andrews*, that, "[i]f an attorney has rendered services and expended money in instituting and conducting a suit and the plaintiff orally agrees that he may retain so much of the avails thereof as will pay him for his services and expenses therein and for previous services in other matters, and he thereafter conducts the suit to a favorable conclusion, he has, as against such plaintiff, an equitable lien upon the avails for the services and expenses in the suit, and for the

previous services embraced in the agreement . . . ." *Cooke* v. *Thresher*, 51 Conn. 105, 107 (1883). *Cooke* thus added to *Gager* and *Andrews* that an equitable charging lien also may arise when a client orally agrees to pay attorney's fees and expenses from the newly acquired proceeds of a favorable judgment.[4] See id.; see also *DeWandelaer* v. *Sawdey*, 78 Conn. 654, 655, 658, 63 A. 446 (1906) (relying on *Cooke* for principle that attorney, by " 'taking up a case' with the understanding that he must look to the judgment to be obtained for compensation for his services and disbursements," had, by virtue of oral agreement, "equitable lien for his services and expenses upon the judgment afterward obtained").

Since *Cooke* and *DeWandelaer*, issues involving charging liens rarely have been litigated in Connecticut. In two relatively recent cases, however, the Appellate Court relied on the principles articulated in *Gager* and *Cooke* in concluding that equitable charging liens are permissible. In *Perlmutter* v. *Johnson*, 6 Conn. App. 292, 505 A.2d 13, cert. denied, 200 Conn. 801, 509 A.2d 517 (1986), cert. denied, 479 U.S. 1035, 107 S. Ct. 886, 93 L. Ed. 2d 839 (1987), in which the plaintiff attorney was paid only a portion of his hourly fees in connection with two separate actions that he had brought on his client's behalf, the attorney placed the funds recovered from a judgment in one of the actions in escrow and commenced an action against his client for the fees allegedly due. Id., 293, 298. Relying on *Cooke*, the Appellate Court concluded that "the [trial] court was correct in permitting [the attorney] to keep these funds as an offset. It has long been held that an attorney has 'an equitable lien upon the avails [of his actions for a client] for the services and expenses in the suit.' *Cooke* v. *Thresher*, [supra, 51 Conn. 107]. . . . [The attorney's] undisputed testimony was that he obtained the funds on [his client's] behalf as a result of an action which he undertook as [his] attorney. He, therefore, had a lien upon those funds." *Perlmutter* v. *Johnson*, supra, 298.

In *D'Urso* v. *Lyons*, supra, 97 Conn. App. 253, in which the attorney's fees also were calculated on the basis of an hourly rate and the written fee agreement between the attorney and the client was silent as to whether the fees would be paid from the proceeds of any recovery; id., 254; the Appellate Court relied on *Cooke* and *Perlmutter* in concluding that, because the attorney had obtained a judgment as a result of the litigation and had not been paid for his services at that time, his retention of the funds and claim for attorney's fees in Probate Court was proper because he "had a valid charging lien on the proceeds of the foreclosure action in the amount of the attorney's fees to which he was owed pursuant to the fee agreement signed by [the client]." Id., 257.

Significantly, none of the foregoing cases involved a marital dissolution action. Thus, none of the judgments

in those cases involved a division of assets in the parties' possession before the action was commenced. Accordingly, Connecticut precedent provides no explicit guidance as to whether dissolution actions are distinguishable from general civil actions for purposes of determining whether an attorney may acquire an equitable charging lien against marital assets. Nevertheless, we conclude that the facts of the foregoing cases, the theoretical underpinnings of charging liens, the public policies implicit in Connecticut's Rules of Professional Conduct, and the unique character of divorce proceedings militate against a conclusion that attorneys are entitled to equitable charging liens in marital dissolution actions in Connecticut.

We first note that every case in which this court or the Appellate Court has considered or referred to an equitable charging lien involved newly created assets that the client received, or hoped to receive, from a judgment in the client's favor as a result of the attorney's efforts. See *DeWandelaer* v. *Sawdey*, supra, 78 Conn. 655 (attorney sought payment from out-of-court settlement that client received in action seeking damages for libel); *Cooke* v. *Thresher*, supra, 51 Conn. 106–107 (attorneys sought payment from proceeds of judgment awarded to client in settlement of claim); *Benjamin* v. *Benjamin*, 17 Conn. 110, 113 (1845) (attorney sought payment from proceeds of judgment awarding client damages and costs); *Andrews* v. *Morse*, supra, 12 Conn. 445–47 (attorney sought payment from proceeds of judgment for client); *Gager* v. *Watson*, supra, 11 Conn. 170 (attorney sought payment from proceeds of judgment for client); *Rumrill* v. *Huntington*, 5 Day (Conn.) 163, 165 (1811) (attorney sought payment from proceeds of judgment awarding damages and costs to client); *D'Urso* v. *Lyons*, supra, 97 Conn. App. 254–55 (attorney sought payment from proceeds obtained for client in foreclosure action); *Perlmutter* v. *Johnson*, supra, 6 Conn. App. 293, 298 (attorney sought payment from proceeds obtained for client). Moreover, we stated in *Cooke* that, pursuant to an agreement with the client, an attorney may have an equitable lien "*upon the avails* for the services and expenses in the suit, and for the previous services embraced in the agreement." (Emphasis added.) *Cooke* v. *Thresher*, supra, 51 Conn. 107. The common and ordinary meaning of the term "avails" is "profits or proceeds . . . ." Webster's Third New International Dictionary (2002) p. 150. Thus, equitable charging liens in Connecticut have been recognized by reviewing courts only when applied to proceeds the client has received as a result of the litigation, there being no cases in which an attorney sought to obtain such a lien against assets in the client's possession before the attorney became involved, such as assets acquired by the parties during their marriage. Although this does not mean that Connecticut precedent precludes recognition of equitable charging liens in marital

dissolution actions, it does mean, at the very least, that there is no clear precedent on which we may rely in deciding whether equitable charging liens should apply in this context.

We thus turn for guidance to the theoretical underpinnings of equitable charging liens. It is generally understood that a charging lien "gives the attorney an equitable ownership interest in the client's cause of action, and the client's property right in his or her own cause of action is only what remains after transfer to the attorney of the attorney's agreed-on share." 7 Am. Jur. 2d, supra, § 317, p. 352; see also R. Lee, comment, "Priority of the Attorney's Charging Lien," 24 J. Legal Prof. 477, 477–78 (2000). Thus, permitting an attorney to obtain an equitable charging lien against marital assets would give the attorney a property right in assets that were in the client's possession before the attorney was hired and that the attorney expended no effort in obtaining. This is not only incompatible with the idea that an attorney has a property right in "the judgment or settlement the attorney has *obtained for the client*"; (emphasis added) 7 Am. Jur. 2d, supra, § 317, p. 351; which authorities generally treat as a property right that the client did not previously possess;[5] see, e.g., R. Lee, supra, 477–78 (referring to judgment proceeds from insurance settlements, damage awards and real or personal property recovered through attorney's efforts); but it would interfere with the "carefully crafted mosaic" created by the balancing and distribution of the parties' financial assets in marital dissolution actions. (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 378, 999 A.2d 721 (2010); see also *Tuckman* v. *Tuckman*, 308 Conn. 194, 214, 61 A.3d 449 (2013) (characterizing financial orders in dissolution proceedings as resembling mosaic, in which various financial components are carefully interwoven with one another). Indeed, one of the chief risks of allowing an equitable charging lien in a marital dissolution action is that a lien could deplete the parties' financial assets to such an extent that there would be little or nothing left for the other purposes the mosaic was intended to advance, such as a child's support or future educational expenses. Accordingly, permitting equitable charging liens against preexisting assets available for distribution to the parties in marital dissolution actions is inconsistent with the general understanding of a charging lien as an equitable ownership interest in the client's cause of action, which arises out of a property right the attorney is hired to assist the client in obtaining through the process of litigation.

There also is no direct support in the Connecticut Rules of Professional Conduct for equitable charging liens in marital dissolution actions. Rule 1.8 (i) provides in relevant part: "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except

that the lawyer may: (1) [a]cquire a lien granted by law to secure the lawyer's fee or expenses . . . ." The commentary adds: "[S]ubsection (i) sets forth exceptions for liens authorized by law to secure the lawyer's fees or expenses and contracts for reasonable contingent fees. The law of each jurisdiction determines which liens are authorized by law. These may include liens granted by statute, liens originating in common law and liens acquired by contract with the client." Rules of Professional Conduct 1.8, commentary.

Although rule 1.8 (i) (1) provides that an attorney may acquire a lien "granted by law" to secure attorney's fees and expenses and does not prohibit an equitable charging lien in a domestic relations matter, the official commentary emphasizes that the "law of each jurisdiction determines which liens are authorized . . . ." Rules of Professional Conduct 1.8, commentary. The rule and commentary thus suggest that the rule, standing alone, cannot be construed to mean that all liens are authorized because it leaves the question of which liens are authorized to the legislature, the courts, and the contract between the attorney and the client.

Rule 1.5 (d) also fails to provide clear guidance on the matter. That rule provides in relevant part: "A lawyer shall not enter into an arrangement for, charge, or collect: (1) Any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a dissolution of marriage or civil union or upon the amount of alimony or support, or property settlement in lieu thereof . . . ." Rules of Professional Conduct 1.5 (d) (1). The official commentary to rule 1.5 explains that "[s]ubsection (d) prohibits a lawyer from charging a contingent fee in a domestic relations matter when payment is contingent upon the securing of a divorce or upon the amount of alimony or support or property settlement to be obtained." Rules of Professional Conduct 1.5, commentary.

Unlike in rule 1.8, there is no reference to charging liens in rule 1.5 or in the commentary to that rule. Accordingly, we conclude that rule 1.5 does not apply to charging liens. To the extent the parties parse the language of rule 1.5 to demonstrate why the rule may or may not refer to charging liens, we observe that, in addition to the fact that charging liens are specifically discussed in rule 1.8, a charging lien is not a fee, contingent or otherwise. Rather, it has been defined in Connecticut as *security* for the nonpayment of an attorney's expenses and fees, usually calculated on an hourly basis and incurred in representing the client. See, e.g., *Gager* v. *Watson*, supra, 11 Conn. 173 (attorney has lien on judgment for "fees and services performed in his professional capacity"). As such, it is a legal tool employed to obtain the payment of attorney's fees and expenses that arise from the litigation process. Although a charging lien does not take effect until a judgment is rendered

and thus might seem to fall within the prohibitions described in rule 1.5, the amount and collection of the underlying fees and expenses that are subject to such a lien, unlike contingency fees, do not depend on the outcome of the litigation but are owed to the attorney regardless of whether payment is obtained by way of a charging lien or by some other method. Rule 1.5 thus provides no guidance as to whether attorneys may acquire equitable charging liens in Connecticut.

We nonetheless conclude that the same public policy considerations on which rule 1.5 (d) (1) is founded counsel against our recognition of equitable charging liens in marital dissolution actions. In *Gil* v. *Gil*, 110 Conn. App. 798, 956 A.2d 593 (2008), the Appellate Court stated that "[t]he main policy concern behind rule 1.5 (d) is that contingency agreements for a dissolution action would discourage lawyers from advocating for an amicable settlement because the lawyers would have a pecuniary interest in the outcome of the dissolution action." Id., 804–805. An equitable charging lien for an attorney's expenses and fees based on hourly rates could have a similarly harmful effect. For example, the satisfactory resolution of a dissolution proceeding ordinarily requires a weighing and balancing of many nonmonetary factors in addition to the parties' liquid and other financial assets. These nonmonetary factors include, at one extreme, potential reconciliation of the parties, and, at the other, child custody, visitation rights and possession of the marital home for continued occupation by the parent who has physical custody of the children. If an equitable charging lien is permitted in this context, the attorney may be tempted or inclined to negotiate a settlement that would sacrifice or diminish some of the client's important nonmonetary interests in favor of liquid assets to which an equitable charging lien could attach. See W. Gamble, comment, "Cash Conflicts: Reconciling Conflicts of Interest Between Attorneys' Fees and the Needs of the Client," 23 J. Legal Prof. 347, 354 (1999) ("[A]n attorney [may have] a personal, pecuniary interest in preventing a reconciliation between husband and wife. In addition, the [attorney] might also have a conflict of interest with the client by seeking greater monetary awards in lieu of intangible interests such as child custody." [Footnote omitted; internal quotation marks omitted.]). An equitable charging lien therefore could interfere with significant personal interests of the parties, encumber existing assets intended for other purposes, and undermine the mosaic crafted by the court. Accordingly, public policy considerations do not weigh in favor of recognizing equitable charging liens in marital dissolution actions.

We finally note that the unique character of marital dissolution actions and the difficult issues that equitable charging liens raise in this context are not easily addressed by piecemeal judicial decisions arising from serendipitous appeals brought over a lengthy period of

time. In the past 180 years, the subject has been addressed in this state in only a handful of cases, none of which, until now, has involved a marital dissolution action. Thus, even though, in the present case, we decline to recognize equitable charging liens in this context, we do not conclude that charging liens are altogether impermissible. Rather, we conclude that whether, and to what extent, charging liens should be permitted in marital dissolution actions are questions that the legislature is in a far better position to resolve than the courts. Among the questions that deserve a more in-depth examination and analysis are (1) the type of marital assets subject to, or exempted from, a charging lien, (2) notice requirements, (3) perfection procedures, (4) the priority of an attorney's charging lien relative to the claims of other creditors, and (5) enforcement proceedings. The complex nature of charging liens explains why they are regulated by statute in at least thirty-two states; W. Hairston, supra, 7 J. Legal Prof. 193–95; and why Connecticut should follow the lead of these states and rely on the legislature for guidance, at least with respect to the propriety of charging liens in marital dissolution actions. In New York, for example, attorney's charging liens are permitted in domestic relations matters pursuant to N.Y. Comp. Codes R. & Regs. tit. 22, § 1400.5 (2015), only when "(1) the retainer agreement provides that a security interest may be sought; (2) notice of an application for a security interest has been given to the other spouse; and (3) the court grants approval for the security interest after submission of an application for counsel fees." Connecticut would benefit from similar legislative direction that places reasonable restrictions on these liens, if deemed permissible, in light of the unique characteristics of marital dissolution proceedings.

The defendants argue that equitable charging liens should be recognized in Connecticut because there is no valid distinction between the assets purportedly "create[d]" by the judgment in a general civil action and the preexisting assets in a marital dissolution action that would justify precluding equitable charging liens in divorce proceedings. The defendants contend that attorneys do not manufacture or create assets but merely "litigate causes of action that belong to clients and are, if successful, reduced to monetary compensation," regardless of the type of action. The defendants further contend that "Connecticut case law is clear that a charging lien attaches to a judgment obtained through the avails of the lawyer" and that no Connecticut court has held that a valid equitable charging lien applies only to newly created assets.

The principal case on which the defendants rely in arguing that a cause of action is a property right that already belongs to a client and that, if successful, is merely reduced to monetary compensation, *Sherman*

v. *Ronco*, 294 Conn. 548, 985 A.2d 1042 (2010), does not support the defendants' claim. In the passage to which the defendants refer, the court initially observes that a cause of action arises from the existence of a primary right in the plaintiff that the defendant allegedly invaded. Id., 555. It then considers whether additional facts in an amended complaint may relate back to the original pleading if the cause of action remains substantially the same. Id. Nothing in *Sherman* concerning the relation back doctrine supports the conclusion that the proceeds of a judgment are never newly created because a successful cause of action is a property right that is merely reduced by the judgment to monetary compensation. The defendants also disregard the fact that, although Connecticut reviewing courts never have explicitly stated that an equitable charging lien applies only to newly created assets, all prior equitable charging lien cases in Connecticut have involved judgment proceeds that the client received as a result of the litigation. Accordingly, the principle recognized in *Cooke* and *D'Urso* that an equitable charging lien may attach to a judgment obtained by the client's attorney cannot apply, without further judicial or legislative review, in cases involving preexisting assets already in the client's possession because marital dissolution proceedings raise special concerns that do not arise in other civil actions. See *Cooke* v. *Thresher*, supra, 51 Conn. 106–107; *D'Urso* v. *Lyons*, supra, 97 Conn. App. 256–58.

The defendants also argue that allowing attorneys to acquire equitable charging liens will have no effect on the distribution of marital assets and will not discourage attorneys from advocating for amicable settlements, but will merely ensure that they have priority with respect to their clients' property in relation to other creditors. We disagree. Although the effect of an equitable charging lien may be to grant first priority to the client's attorney over other creditors, it is not necessarily true, as the defendants claim, that an amicable settlement eliminates any potential risk that the trial court would award a judgment insufficient to cover a client's attorney's fees and costs. In cases that involve limited financial assets, an amicable settlement might afford the client generous child custody terms and the marital home in exchange for assignment of the bulk of the financial assets to the other party, leaving the client to pay the attorney from future income or other unidentified sources, and setting the stage for a possible future conflict between them.[6]

The defendants finally argue that "[n]umerous states that recognize the validity of an [equitable] charging lien have decided cases involving family relations matters," thus suggesting that such states also recognize the validity of equitable charging liens in marital dissolution proceedings. This, however, is not the case. The defendants cite to twelve jurisdictions that explicitly have held or expressed the view that a lien for attorney's

fees *cannot* be enforced against awards of alimony and/or child support, and eight that explicitly have held or expressed the view that a lien for attorney's fees *can* be enforced against an award of alimony and/or child support.[7] See G. Garrison, annot., "Alimony or Child-Support Awards As Subject to Attorneys' Liens," 49 A.L.R.5th 595, 607–17, §§ 3a, 3b, 4a and 4b (1997) (listing cases from jurisdictions that fall within foregoing categories). Moreover, in the eight jurisdictions in which the court explicitly held or determined that an attorney's charging lien could be enforced against an award of alimony and/or child support, the courts in five jurisdictions based their holdings on statutory authority rather than the common law. Id., §§ 4a and 4b, pp. 613–17. We therefore conclude that attorneys are not entitled by operation of law to equitable charging liens on marital assets for fees and expenses incurred in obtaining judgments for their clients in marital dissolution proceedings in Connecticut.[8]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

[1] The named defendant, James F. Jordan III, and the third-party defendant, Diana M. Jordan, also were parties to the present action but not to this appeal. We hereinafter refer to James F. Jordan III as James Jordan and Diana M. Jordan as Diana Jordan. We hereinafter refer to Forzani and Carlo Forzani, LLC, collectively as the defendants.

[2] We granted the plaintiff's petition for certification to appeal, limited to the following issues: "1. Did the Appellate Court properly conclude that the [defendants] were entitled to an equitable charging lien on marital assets for their attorneys' fees that arose by operation of law when they obtained a judgment for their client in the underlying marital dissolution action?

"2. If the answer to the first question is in the affirmative, does the charging lien attach as of the date of the commencement of the action and take priority over any creditors subsequently securing an interest in the marital asset in which the attorneys claim an interest?" *Olszewski* v. *Jordan*, 310 Conn. 930, 78 A.3d 857 (2013).

[3] An attorney's charging lien also was sought in *Rumrill* v. *Huntington*, 5 Day (Conn.) 163 (1811). In *Rumrill*, we concluded that "an attorney has no lien upon a judgment obtained in favor of his client, which can vary or affect the rights of a stranger. No such lien is created, either at common law, or by principles of chancery." Id., 165. We thereby *implied* that an attorney could recover fees and expenses from a client by way of an equitable charging lien when there were no other claims by a third party. See id.; see also *Benjamin* v. *Benjamin*, 17 Conn. 110, 113–14 (1845) (affirming holding in *Rumrill*). In *Rumrill*, the attorney ultimately recovered his fees because he had obtained a written assignment of the judgment proceeds prior to a third party's assertion of a similar claim. See *Rumrill* v. *Huntington*, supra, 165.

[4] In *Cooke*, we characterized the oral agreement as an "assignment" to the attorneys of the proceeds from the judgment. (Internal quotation marks omitted.) *Cooke* v. *Thresher*, supra, 51 Conn. 106. We need not determine at this point in our analysis, however, whether an equitable charging lien that does not arise from an oral agreement, such as the liens at issue in *Gager* and *Andrews*, is distinguishable from the type of charging lien at issue in *Cooke*.

[5] An attorney's assistance in obtaining *sole* possession of a portion of the marital assets is distinguishable from an attorney's assistance in obtaining a newly created asset, such as a damage award.

[6] We dismiss outright the defendants' speculative claim that the prohibition of equitable charging liens in domestic relations matters would create disincentives for attorneys to take these cases, thus increasing the number of self-represented litigants, there being no evidence of such an effect.

[7] One of these jurisdictions, South Dakota, concluded that liens for attorney's fees can be enforced against an award of alimony but not against an award of child support; see *Jasper* v. *Smith*, 540 N.W.2d 399, 404–405 and n.4 (S.D. 1995); and, therefore, is counted in both categories.

[8] We thus need not reach the second certified question. See footnote 2 of this opinion.